**Maria Virginia PEREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–02–00422–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 11, 2004.

Rehearing Overruled April 22, 2004.

Philip Thomas Cowen, Attorney At Law, Brownsville, for Appellant.

Yolanda De Leon, Dist. Atty., Brownsville, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

## OPINION

Opinion by Justice HINOJOSA.

Pursuant to a plea agreement, appellant, Maria Virginia Perez, pleaded guilty to the

offense of reckless injury of a child.[1] The trial court found her guilty and, in accordance with the plea agreement, assessed appellant's punishment at fifteen years imprisonment. The trial court has certified that this "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal." *See* Tex.R.App. P. 25.2(a)(2). By two issues, appellant contends: (1) the trial court erred in denying her motion to suppress; and (2) the trial court violated her constitutional right to a competency hearing. We affirm.

## A. FACTUAL BACKGROUND

On March 5, 2001, Officer Oracio Ramirez, Jr., of the Harlingen Police Department, responded to a 911 call at 1510 North Commerce in Harlingen, Texas. Upon his arrival, Ramirez encountered a man holding a baby, and an adult female and young boy standing near the man. The man informed Ramirez that the baby had stopped breathing and asked him for help. Ramirez determined that the baby was not breathing, had no pulse, and was unresponsive. Shortly thereafter, Officer Margarito De la Fuente arrived, and the officers began to perform CPR. Shortly thereafter, EMS and the fire department arrived and took care and custody of the child. The child was transported to the hospital, but did not survive.

After the medical emergency personnel arrived on the scene, the officers began to interview the adults. Ramirez interviewed the male, who identified himself as Elias Perez, the father of the infant. He told Ramirez that he had walked to a nearby pay telephone to call the electric company about service for their trailer, and he had left the infant with appellant in the trailer. He said he was at the pay telephone for approximately seven minutes when appellant came running toward him with the baby, informing him that the baby was not breathing. He called 911.

De la Fuente interviewed appellant, Maria Virginia Perez. She told De la Fuente that both she and her husband had walked to the pay phone to call the electric company, leaving the baby alone in the trailer. She said they had left the baby because she was sick, and they did not want to expose her to the cold. She said that after about five minutes she had returned to the trailer to check on the baby and had found a clear plastic bag over the baby's nose. She also saw blood on the baby's nose. After the officers conferred and determined they had conflicting stories, De la Fuente called and asked that his supervisor, Sergeant Valdemar Guajardo, report to the scene.

Upon his arrival, Guajardo spoke with both officers and was advised that appellant and her husband had given conflicting stories. Guajardo told De la Fuente to transport appellant to the station for further investigation. Appellant was placed in the back of a patrol unit, unhandcuffed, along with her son, and transported to the police station between 7:45 p.m. and 8:15 p.m.

At approximately 9:30 p.m., Detective Miryam Anderson met with appellant at the police station. After reading appellant her Miranda rights and obtaining her signature on the rights card, Anderson began to take appellant's first statement. Appellant gave an exculpatory statement. However, after completing the statement, appellant appeared as if she wanted to say something else. Anderson asked appellant if she had anything to add. After hesitating for a moment, appellant stated, "No that's how it happened, the way I said it."

---

1. *See* Tex Pen.Code Ann. § 22.04 (Vernon 2003).

At this point, Detective Richard Turner entered the room, reviewed appellant's statement, and advised appellant that he and Anderson were going to leave the room to discuss the information the police had obtained, and that when Anderson returned, he wanted appellant to tell her the truth. A few minutes later, Anderson returned to the interview room. Anderson told appellant that if she had any information regarding how her daughter was injured, it was important that she reveal that information. Appellant then gave her second statement. In this statement, appellant admitted that she placed a plastic bag over her daughter's face for approximately four minutes, until she saw blood coming out of the child's nose.

### B. Motion To Suppress

■ In her first issue, appellant contends the trial court erred in denying her motion to suppress her oral statement because it was obtained pursuant to an illegal arrest. The State argues that appellant was not under arrest, but detained for questioning at the time she gave her statement. In the alternative, the State argues that appellant was properly arrested because probable cause existed to believe that appellant had caused serious bodily injury to a family member. *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(a)(4) (Vernon Supp.2004).

■ An accused seeking to suppress evidence on the basis of illegal police conduct bears the burden of proof to rebut a presumption of proper police conduct. *See McGee v. State,* 105 S.W.3d 609, 613 (Tex. Crim.App.2003). The accused satisfies the burden if she proves that the police acted without a warrant. *Id.* The burden then shifts to the State to either produce a warrant or prove the reasonableness of the challenged conduct. *Id.* If the State produces a warrant, the burden of proof again

shifts to the accused to show the invalidity of the warrant. *Russell v. State,* 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986) (op. on reh'g). If the State is unable to produce a warrant, it must prove the reasonableness of the search or seizure. *Id.* The State may demonstrate reasonableness by proving probable cause. *See McGee,* 105 S.W.3d at 613 (State meets burden in suppression hearing by proving one of statutory exceptions to warrant requirement). The State must prove probable cause by a preponderance of the evidence. *Porter v. State,* 938 S.W.2d 725, 727–28 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd).

■ When we review a motion to suppress, we give great deference to the trial court's findings of historical facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim. App.1997). We review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Id.* We will sustain the trial court's ruling admitting the evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State,* 70 S.W.3d 841, 845 (Tex.Crim.App.2002). This is so even if the trial judge gives the wrong reason for her decision. *State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000) (citing *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990)).

■ Whether appellant's confession resulted from an investigative detention or an arrest is resolved by determining whether appellant was in custody at the time she gave her confession. The following situations generally constitute custody: (1) when the suspect is physically deprived of her freedom of action in any significant way; (2) when a law enforcement officer tells the suspect she cannot leave; (3) when a law enforcement officer creates a situation that would lead a reasonable person to believe that her freedom of move-

ment has been significantly restricted; and (4) when there is probable cause to arrest and a law enforcement officer does not tell the suspect that she is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim.App.1996).

Officer De la Fuente told appellant that she had to go to the police station for further investigation. Appellant was placed in the back of a police car, transported to the station, and remained in the squad room until Detective Anderson arrived. At that time, appellant and Anderson entered an eight-foot by eight-foot interview room, and appellant was read her Miranda rights. Appellant was in the interview room for approximately three and one-half to four hours. She was not told that she could refuse to go to the station, or that she could leave once she arrived at the station. In fact, two officers testified that probable cause existed to restrain her liberty, and if appellant had said she wanted to leave, she would have been placed under formal arrest. Under these facts, we conclude appellant was in custody. Therefore, we must determine whether the officers had probable cause to arrest her.

▇▇▇ A police officer may arrest, without a warrant, a person the officer has probable cause to believe has committed an assault resulting in bodily injury to a member of the person's family or household. TEX.CODE CRIM. PROC. ANN. art. 14.03(a)(4) (Vernon Supp.2004). Probable cause exists where the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe a particular person has committed, or is committing, an offense. *Hughes v. State*, 24 S.W.3d 833, 838 (Tex.Crim.App.2000); *Guzman*, 955 S.W.2d at 87. Probable cause deals with probabilities; it requires more than mere suspicion, but far less evidence than that

needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Hughes*, 24 S.W.3d at 838; *Guzman*, 955 S.W.2d at 87. In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officer at the time of the arrest. *Amores v. State*, 816 S.W.2d 407, 415 (Tex.Crim.App.1991). Whether probable cause exists is determined by considering the totality of the circumstances. *Id.* at 413.

When Ramirez and De la Fuente arrived at the scene, they observed blood coming out of the baby's mouth and nose. They questioned both parents regarding the circumstances surrounding the baby's condition and found that the parents' stories were in conflict. Mr. Perez said that he had walked to a nearby pay telephone to call the electric company about service for their trailer, and that he had left the infant with appellant in the trailer. Appellant said that: (1) both she and her husband had walked to the pay telephone to call the electric company, (2) they had left the baby alone in the trailer, and (3) she had returned to the trailer about five minutes later to check on the baby. However, both versions clearly showed that appellant was the last person to be with the baby. The officers also had knowledge that the baby had a plastic bag on her face.

Considering the totality of the circumstances, and reviewing the facts known to the officers at the time of the arrest, we conclude the evidence constituted reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe that appellant had committed an assault resulting in bodily injury to the baby, a member of appellant's family. *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(a)(4) (Vernon Supp.2004). Accordingly, we overrule appellant's first issue.

## C. COMPETENCY HEARING

In her second issue, appellant contends the trial court refused to give her an adequate hearing to determine her competency to stand trial as required by the United States Constitution.

The due process right to a fair trial prevents the government from subjecting a person to trial whose "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Alcott v. State,* 51 S.W.3d 596, 598 (Tex. Crim.App.2001). Thus, to protect a criminal defendant's constitutional rights, a trial court must inquire into the accused's mental competence once the issue is sufficiently raised. *McDaniel v. State,* 98 S.W.3d 704, 709 (Tex.Crim.App.2003) (citing *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)).

These due process standards are built into article 46.02 of the code of criminal procedure. *Id.* Under section 1A(a) of article 46.02, "[a] person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46.02 § 1A(a) (Vernon Supp.2004). Section 2 of article 46.02 provides:

(a) The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.

(b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

TEX.CODE CRIM. PROC. ANN. art. 46.02 § 2(a), (b) (Vernon Supp.2004).

Under section 2, the trial court is required to conduct a non-jury hearing, referred to as a "Section 2 inquiry," on whether to hold a jury trial on the defendant's competency "if evidence of the defendant's incompetency is brought to the attention of the court from any source." *McDaniel,* 98 S.W.3d at 710. A Section 2 or "competency inquiry" is required only if the evidence brought to the judge's attention raises a bona fide doubt in the judge's mind about the defendant's competency to stand trial. *Id.* Evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *Id.* When such a bona fide doubt does exist, the court must conduct the Section 2 competency inquiry to determine whether there is "some evidence" to support a finding of incompetency, and if so, to commence a Section 4 competency hearing before a jury. *Id.* The requirements of each step must be fulfilled before moving on to the next. *Id.*

In the present case, appellant filed a motion to "Appoint Psychologist to Evaluate Defendant for Insanity & Competency and to Assist in the Preparation and Presentation of Defense" on June 15, 2001. Appellant was examined by Dr. David Moron and Dr. James A. Freeberg. Both doctors testified at the January 30, 2001

hearing on appellant's motion to suppress. Dr. Freeberg testified as appellant's witness, and Dr. Moron testified as a State witness. Dr. Freeberg testified that appellant has an IQ associated with mild mental retardation. Appellant's functional capacity, however, falls within the borderline range. The borderline range is above the mildly mentally retarded range, but below the low average range. Dr. Moron agreed with Dr. Freeberg's assessment of appellant's mental capacity as being in the borderline range. Both doctors testified that appellant was competent to stand trial and had the ability to assist her attorney in her defense. The record reflects that appellant failed to present evidence to the trial court which raised a bona fide doubt about her competency to stand trial. Therefore, the trial court was relieved of the requirement to hold a Section 2 "competency inquiry." Appellant's second issue is overruled.

The judgment of the trial court is affirmed.