**Guillermo Moreno LERMA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–02–00145–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 22, 2005.

222

Rogelio Garza, Edinburg, for appellant.

Theodore C. Hake, Diane Palmiotti, Asst. Criminal Dist. Attys., Rene A. Guerra, Criminal Dist. Atty., Edinburg, for appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

Opinion by Justice HINOJOSA.

A jury found appellant, Guillermo Moreno Lerma, guilty of the offense of capital murder,[1] and the trial court assessed his punishment at life imprisonment. The trial court has certified that this "is not a plea bargain case, and [appellant] has the right of appeal." *See* TEX.R.APP. P. 25.2(a)(2). By three points of error, appellant complains the trial court erred in denying his motion to suppress tangible and oral evidence and in denying his request to exclude the media during his testimony in support of the motion to suppress. We affirm.

### A. BACKGROUND

The record reflects that the victim's mother awoke at approximately 5:00 a.m. and found her two-year-old child and appellant gone from their apartment. After searching for her daughter and appellant, and also finding certain items missing,[2] the mother used a neighbor's telephone and called the police. An officer arrived, searched the apartment for the child, found no signs of forced entry, and took an incident report. The officer left and a police broadcast was issued for the missing child, including appellant's physical and vehicle description. At approximately 6:30 a.m., appellant returned to the apartment complex in his vehicle but without the child. On the curb next to the vehicle, the mother confronted appellant concerning the child's whereabouts.

Officer Reynero heard the broadcast while on patrol in the area of the apartment complex and began his search. He noticed the vehicle mentioned in the broadcast parked in front of the missing child's apartment. As he approached, he observed a man and a woman arguing in front of the vehicle. Reynero learned the

---

1. *See* TEX. PEN.CODE ANN. § 19.03(a)(8) (Vernon 2004).

2. The handheld receiver to the telephone, the mother's wallet, the child's shoes, and some documents were the items reported missing.

man was appellant and the woman was the mother of the missing child. Officer Rivas arrived as backup, followed shortly thereafter by Officer Venecia. Leaving the other two officers on the curb with appellant, Reynero escorted the mother to the apartment. A broadcast was issued over the police radio shortly after the officers arrived, advising that appellant had an active arrest warrant; however, the officers on location did not hear the broadcast.

While with appellant, Rivas asked whether he spoke English or Spanish. Appellant said he spoke only Spanish. Rivas then gave appellant the *Miranda*[3] warnings in Spanish. Venecia asked appellant if he would consent to a search of his vehicle, and appellant responded in Spanish, "Yes, check it out, go ahead." Appellant assisted by opening the trunk since "the key is kind of tricky." Rivas questioned appellant regarding the location of the missing child.

During the vehicle search, Sergeant Rodriguez and Corporal Saenz arrived. While briefing them on the situation, appellant suddenly began speaking English to the officers. Rivas again asked appellant if he spoke English. Appellant indicated he did, and Rivas then gave appellant the *Miranda* warnings in English followed by the questions he had previously asked him in Spanish. Appellant repeatedly maintained he did not know the whereabouts of the child.

Venecia found the reported missing items in appellant's vehicle.[4] The items were subsequently identified and returned to the mother. Corporal Saenz, aware of the active arrest warrant, ordered Rivas to detain appellant and transport him to the police station. Appellant was arrested at approximately 7:00 a.m.

During the booking procedure, Investigator Ruiz informed appellant of his *Miranda* rights, and appellant waived them. Appellant signed a written waiver of his *Miranda* rights at approximately 10:30 a.m. A polygraph examination was suggested by the investigators, and appellant accepted as long as he had an attorney present for the exam. An investigator called the district attorney's office to have an attorney appointed for appellant. Appellant, however, changed his mind and refused the polygraph and attorney. An investigator then cancelled the request for an appointed attorney.

That afternoon, Investigator Trevino advised appellant of his *Miranda* rights, and appellant told him it was not necessary because he had already heard them. At approximately 4:30 p.m., appellant confessed that he had killed the child.

Appellant signed another written waiver of his *Miranda* rights late in the evening. Before midnight, appellant again admitted to killing the child and told Trevino he would take him to the body. After midnight, at approximately 12:30 a.m., the child's body was found on the banks of a dry canal. Appellant had taken Trevino to the location.

### B. Motion to Suppress

By his first point of error, appellant contends the trial court erred in denying his motion to suppress the items found in his car. Specifically, he asserts the items were the product of an illegal detention, arrest, and search and seizure.

---

3. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. The telephone receiver was in the glove compartment, the child's documents were under the front seat, and a plastic bag with pictures of the mother and child were found under the hood.

### 1. Standard of Review

A trial court's ruling on a motion to suppress is generally reviewed for abuse of discretion. *See Ford v. State*, 26 S.W.3d 669, 672 (Tex.App.-Corpus Christi 2000, no pet.) (citing *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999)). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). In reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's findings turn on evaluating a witness's credibility and demeanor. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005); *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We afford the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "questions of law and fact," if resolving those ultimate questions turns on evaluating credibility and demeanor. *Estrada*, 154 S.W.3d at 607; *Ross*, 32 S.W.3d at 856; *Guzman*, 955 S.W.2d at 89. However, we review de novo questions of law and "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. *Estrada*, 154 S.W.3d at 607; *Ross*, 32 S.W.3d at 856; *Guzman*, 955 S.W.2d at 89. Determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal although great weight should be given to the inferences drawn by the trial court and law enforcement officers. *Guzman*, 955 S.W.2d at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

The totality of the circumstances test is the current reasonableness standard for reviewing reasonable suspicion arising in warrantless arrests. *State v. Cerny*, 28 S.W.3d 796, 798 (Tex.App.-Corpus Christi 2000, no pet.). We will sustain the trial court's ruling admitting the evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Perez v. State*, 130 S.W.3d 881, 885 (Tex.App.-Corpus Christi 2004, no pet.) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002)). Even if the trial court gives a wrong reason for its decision, so long as a correct theory of law is found, we will sustain the ruling. *See id.; Ross*, 32 S.W.3d at 855–56.

### 2. Investigative Detention Leading to Arrest

We first address whether sufficient reasonable suspicion existed to warrant a custodial detention. A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997); *Cerny*, 28 S.W.3d at 800. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Woods*, 956 S.W.2d at 38; *Cerny*, 28 S.W.3d at 800. In accordance with the Fourth and Fourteenth Amendments, an investigative detention is categorized as a

seizure. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995).

■ A brief detention for investigative purposes, limited in time and scope, can readily evolve into an arrest. *See United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir.1996). An arrest is a high level of intrusion that will be longer in duration and will generally commence when a person is actually placed under restraint or taken into custody by an officer. *See* Tex.Code Crim. Proc. Ann. art. 15.22 (Vernon Supp.2004). However, use of restraint by an officer is not always indicative of an arrest since an officer is permitted to use force reasonably necessary to maintain status quo during investigative detentions. *Zayas v. State*, 972 S.W.2d 779, 789 (Tex.App.-Corpus Christi 1998, pet. ref'd). A person is in "custody" only if, given the totality of the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996) (citing *Stansbury v. California*, 511 U.S. 318, 323–25, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). The reasonable person standard assumes a reasonable person innocent of criminal activity. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

■ The following four situations may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt*, 931 S.W.2d at 255

(citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App.1985)).

■ A police officer may arrest without a warrant persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony. Tex.Code Crim. Proc. Ann. art. 14.03(a)(1) (Vernon Supp.2004–05). Probable cause exists where law enforcement officers have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe a particular person has committed, or is committing, an offense. *Hughes v. State*, 24 S.W.3d 833, 838 (Tex.Crim.App.2000); *Perez*, 130 S.W.3d at 886; *Guzman*, 955 S.W.2d at 87. Probable cause deals with probabilities; it requires more than mere suspicion, but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Perez*, 130 S.W.3d at 886. In reviewing a warrantless arrest to determine the existence of probable cause, the facts known to the officer at the time of the arrest are evaluated. *Id.* The totality of the circumstances is reviewed to determine the existence of probable cause. *See id.*

When Officer Reynero stopped his patrol unit after observing appellant and his vehicle, an investigative detention commenced. Specific articulable facts existed raising reasonable suspicion that appellant was involved in criminal activity. *See Cerny*, 28 S.W.3d at 800. The child was missing; appellant was also missing from the same apartment; no sign of forced entry was present; and an incident report was filed. Investigative questions were asked concerning the whereabouts of the missing child. The officers did not draw their service weapons or advise appellant that he was not free to leave. Appellant did not request to leave. A reasonable num-

ber of officers were present to conduct the investigation and maintain status quo. Restraints were not immediately placed on appellant. A reasonable innocent person would not have considered himself in custody at this point. *See Dowthitt,* 931 S.W.2d at 254. Given the totality of the circumstances, we conclude reasonable suspicion existed to conduct an investigative detention.

 The detention, however, rose to the level of arrest at two points during the investigation, and for two separate reasons. The first point was when Corporal Saenz arrived with knowledge of an arrest warrant. Although appellant was not immediately advised of his impending arrest or handcuffed, he was then considered in custody. *See Dowthitt,* 931 S.W.2d at 255. The second point arose from the finding of the missing items in appellant's vehicle. Those findings combined with the totality of the circumstances warranted probable cause. We conclude appellant was subject to a valid arrest based on an active arrest warrant. Moreover, sufficient probable cause existed to warrant custodial detention in connection with the disappearance of the child.

### 3. *Consent to Search*

 We next address whether appellant gave consent to have his vehicle searched. One of the established exceptions to the warrant and probable cause requirements of the Fourth Amendment is a search conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To show valid consent, the consent must "not be coerced by explicit or implicit means, by implied threat, or covert force." *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000) (quoting *Schneckloth,* 412 U.S. at 228, 93 S.Ct. 2041). If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding. *Id.*

The record shows that prior to appellant's consent to the search of his vehicle, only two officers were present and appellant was advised of his *Miranda* rights. Appellant was subject to an investigative detention only and not yet under custodial arrest. He unequivocally consented to the search by telling the officer in Spanish to go ahead and check it out. He even demonstrated his voluntariness by assisting the officers in unlocking the trunk. We find no evidence in the record showing any force, threat, coercion, or claim of authority. The State bore the burden of proving the voluntariness of consent and that burden was met. *See State v. Ibarra,* 953 S.W.2d 242, 245 (Tex.Crim.App.1997).

Because the officers did not exceed the scope of their detention of appellant prior to arrest, we conclude appellant voluntarily and freely consented to the search. Accordingly, we hold the trial did not err in denying appellant's motion to suppress the items found in his car. We overrule appellant's first point of error.

### C. ORAL STATEMENTS

 By his second point of error, appellant contends the trial court erred in denying his motion to suppress his oral statements. Specifically, appellant asserts the statements were obtained in violation of his constitutional rights and were the product of a warrantless arrest.

 A defendant may waive his *Miranda* rights provided the waiver is made voluntarily, knowingly, and intelligently. *Ashcraft v. State,* 934 S.W.2d 727, 737 (Tex.App.-Corpus Christi 1996, pet. ref'd) (citing *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). Only if the totality of the circumstances

surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived. *Id.*

Appellant was advised once in Spanish, three or more times in English, and twice in writing of his *Miranda* rights. Consequently, he verbally and expressly waived his right to be silent and have an attorney present. The trial court determined that appellant, a thirty-five-year-old adult, had adequate command of the English language and a sufficient level of education. No evidence of abuse or coercion is contained in the record. The record shows that the officers ensured the appellant a satisfactory comfort level. He was provided adequate food, breaks, and clothing. Two separate third parties were also permitted to speak with appellant, alone, while in custody at the police station.

When appellant agreed to a polygraph examination and requested an attorney, the officers complied and made arrangements for one to be appointed. However, appellant of his own free will refused the polygraph and attorney representation.

Appellant was arrested and held on an active warrant. The custodial detention of appellant in connection with the disappearance of the missing child was valid. We conclude appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights. We hold the trial court did not err in denying appellant's motion to suppress his oral statements. We overrule appellant's second point of error.

### D. Media Exclusion Request

By his third point of error, appellant contends the trial court erred in denying his request to exclude the media at his suppression hearing. A ruling on a motion based on pretrial publicity is reviewed for abuse of discretion. *See Lopez*

*v. State,* 628 S.W.2d 77, 81 (Tex.Crim.App. 1982).

The Sixth Amendment provides, in pertinent part, "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Art. I; *see* Tex. Const. art. I, § 10 (providing that the accused shall have a speedy public trial by an impartial jury). Open trials have played an important role in the administration of justice and have been deeply rooted in our nation's history even before separation from England. *See Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed. *Id.* The sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. *Id.* The requirement of a public trial is for the benefit of the accused. *Waller,* 467 U.S. at 46, 104 S.Ct. 2210. The public is able to see that the accused is fairly dealt with and not unjustly condemned. *Id.* The presence of spectators also ensures the accused is keenly represented and his triers are focused on their responsibility. *See id.* Lastly, witnesses are discouraged from committing perjury. *Id.* at 47, 104 S.Ct. 2210.

The media is an extension of the public body. The press and public have rights afforded them under the First Amendment to attend public hearings and view public documents. Nevertheless, there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. *Gannett Co. v. DePasquale,* 443 U.S. 368, 380, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

But vital as it is to protect freedom of the press, especially in reporting about the criminal justice system, the rights of the press may collide with the criminal defendant's equally significant right to a fair trial. *United States v. Brown*, 250 F.3d 907, 915 (5th Cir.2001). The central aim of a criminal proceeding is to ensure that the accused is tried fairly and impartially. *See id.*; TEX. CONST. art. I, § 10. Circumstances do arise where closed proceedings are warranted, but the closures must be rare and only for cause shown that outweighs the value of openness. *Press–Enterprise*, 464 U.S. at 509, 104 S.Ct. 819.

■ Suppression hearings often are as important as the trial itself. *Waller*, 467 U.S. at 46, 104 S.Ct. 2210. The need for an open proceeding is particularly strong because a challenge to the seizure of evidence, just as the case at bar, frequently attacks the conduct of police and the prosecutor. *See id.* at 47, 104 S.Ct. 2210. The presumption of an open proceeding may be overcome, though, only by an overriding interest based on articulated findings that closure is essential and is narrowly tailored to serve that interest. *See Press–Enterprise*, 464 U.S. at 510, 104 S.Ct. 819.

Appellant cites the *Waller* case for the applicable factors to determine if closing a suppression hearing is necessary. The *Waller* test requires the following: (1) the party seeking to close a court proceeding must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure. *See Waller*, 467 U.S. at 46, 104 S.Ct. 2210.

We note that the *Waller* case has been distinguished. *See United States v. Osborne*, 68 F.3d 94 (5th Cir.1995). In *Os-*borne, the Fifth Circuit concluded that *Waller* applies only to full closure of proceedings, not partial closures. *See id.* at 98. The partial closing of court proceedings does not raise the same constitutional concerns as a total closure, because an audience remains to ensure the fairness of the proceedings. *Id.* The Fifth Circuit adopted the less-stringent test advanced by the Second, Eighth, Ninth, Tenth, and Eleventh Circuit Courts which requires the party seeking a partial closure to show only a "substantial reason." *Id.* at 98–99. All else remains constant in the *Waller* test; substantial reason only substitutes the "overriding interest" standard of the first factor. *See Woods v. Kuhlmann*, 977 F.2d 74, 76–78 (2nd Cir.1992).

To determine what constitutes a substantial reason, factors such as the age of the witness, the nature of an alleged offense, and the potential for harm to the witness should be weighed. *United States v. Farmer*, 32 F.3d 369, 371 (8th Cir.1994); *United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir.1992); *see Woods*, 977 F.2d at 77 (determining substantial reason arises when it is for protection of witness who claims to be frightened as result of perceived threats); *Nieto v. Sullivan*, 879 F.2d 743, 753 (10th Cir.1989); *Douglas v. Wainwright*, 739 F.2d 531 (11th Cir.1984).

In the instant case, appellant asserts the reason for excluding the media during his testimony was to avoid having his testimony appear on television or in the newspaper which could prejudice and taint the jury pool, thus denying him an impartial trial. Appellant argued at the suppression hearing that his testimony was primarily for the court, and the broadcasting interfered with his ability to testify.

Although jury pool tainting is a valid concern, appellant's argument does not constitute a substantial reason for partially

closing the proceeding. The United States Supreme Court acknowledges that one of the reasons most advanced for closing a trial—avoiding tainting the jury by pretrial publicity—is largely attenuated where the jurors have been empaneled and instructed not to discuss the case or observe press accounts of the matter by any means. *See Waller,* 467 U.S. at 47 n. 6, 104 S.Ct. 2210.

■■■■ The record reflects that before the suppression hearing, the venire was sworn and specifically instructed not to discuss the case or read or view press materials about the case. Instructions of the court are presumed to be obeyed unless there is something in the record to rebut the presumption. *See Williams v. State,* 937 S.W.2d 479, 490 (Tex.Crim.App. 1996); *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987) (setting out jury presumed to follow instruction to disregard evidence); *Lopez v. State,* 664 S.W.2d 815, 817 (Tex.App.-Corpus Christi 1984, no pet.) (providing jury presumed to obey instruction to disregard improper testimony). Furthermore, the trial court advised appellant that he could voir dire the venire to determine whether any potential juror had disregarded the court's instructions.[5]

Because appellant was concerned with the pressures of having microphones and cameras present, the court informed him that he would be treated fairly in the courtroom and that any sense of nervousness would be taken into consideration.[6] Appellant advanced a concern not unlike that shared by those facing similar allegations. However, he failed to distinguish his concern, given the safeguards in place at the time to ensure he received a fair and impartial trial.

Because appellant did not advance a substantial reason that was likely to be prejudiced, it is not necessary to address the remaining factors of the *Waller* test. We hold the trial court did not abuse its discretion in denying appellant's request for a closed hearing on his motion to suppress. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.

■■■■■■■■■■■■■■■■■■■■

---

5. Appellant does not cite to any evidence in the record showing that the venirepersons disregarded the court's instruction or were tainted in any manner.

6. After appellant testified at the suppression hearing, the trial court commented on the record that appellant had "good control of the questions that were asked of him" and "seemed to follow a flow." He also said appellant "knew what he wanted to say and said it."