NUMBER 13-02-00145-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

GUILLERMO MORENO LERMA,                                                      Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

 

    On appeal from the 370th District Court of Hidalgo County,
Texas.

 

                               O P I N I O N

 

    Before Chief Justice Valdez and Justices Hinojosa and
Rodriguez

                                      Opinion
by Justice Hinojosa

 








A jury found appellant, Guillermo Moreno Lerma,
guilty of the offense of capital murder,[1]
and  the trial court assessed his
punishment at life imprisonment.  The
trial court has certified that this Ais not a plea bargain case, and [appellant] has the
right of appeal.@  See Tex. R. App. P. 25.2(a)(2).  By three points of error, appellant complains
the trial court erred in denying his motion to suppress tangible and oral
evidence and in denying his request to exclude the media during his testimony
in support of the motion to suppress.  We
affirm.

                                                             A.  Background

The record reflects that the victim=s mother awoke at approximately 5:00 a.m. and found
her two-year-old child and appellant gone from their apartment.  After searching for her daughter and
appellant, and also finding certain items missing,[2]
the mother used a neighbor=s telephone and called the police.  An officer arrived, searched the apartment
for the child, found no signs of forced entry, and took an incident
report.  The officer left and a police
broadcast was issued for the missing child, including appellant=s physical and vehicle description.  At approximately 6:30 a.m., appellant
returned to the apartment complex in his vehicle but without the child.  On the curb next to the vehicle, the mother
confronted appellant concerning the child=s whereabouts. 









Officer Reynero heard the broadcast while on patrol
in the area of the apartment complex and began his search.  He noticed the vehicle mentioned in the
broadcast parked in front of the missing child=s
apartment.  As he approached, he observed
a man and a woman arguing in front of the vehicle.  Reynero learned the man was appellant and the
woman was the mother of the missing child. 
Officer Rivas arrived as backup, followed shortly thereafter by Officer
Venecia.  Leaving the other two officers
on the curb with appellant, Reynero escorted the mother to the apartment.  A broadcast was issued over the police radio
shortly after the officers arrived, advising that appellant had an active
arrest warrant; however, the officers on location did not hear the broadcast.

While with appellant, Rivas asked whether he spoke
English or Spanish.  Appellant said he
spoke only Spanish.  Rivas then gave
appellant the Miranda[3]
warnings in Spanish.  Venecia asked
appellant if he would consent to a search of his vehicle, and appellant
responded in Spanish, AYes, check it out, go ahead.@  Appellant
assisted by opening the trunk since Athe key is kind of tricky.@  Rivas
questioned appellant regarding the location of the missing child.

During the vehicle search, Sergeant Rodriguez and
Corporal Saenz arrived.  While  briefing them on the situation, appellant
suddenly began speaking English to the officers.  Rivas again asked appellant if he spoke
English.  Appellant indicated he did, and
Rivas then gave appellant the Miranda warnings in English followed by
the questions he had previously asked him in Spanish.  Appellant repeatedly maintained he did not
know the whereabouts of the child.  

Venecia found the reported missing items in appellant=s vehicle.[4]  The items were subsequently identified
and returned to the mother.  Corporal
Saenz, aware of the active arrest warrant, ordered Rivas to detain appellant
and transport him to the police station. 
Appellant was arrested at approximately 7:00 a.m.








During the booking procedure, Investigator Ruiz
informed appellant of his Miranda rights, and appellant waived
them.  Appellant signed a written waiver
of his Miranda rights at approximately 10:30 a.m.  A polygraph examination was suggested by the
investigators, and appellant accepted as long as he had an attorney present for
the exam.  An investigator called the
district attorney=s office to have an attorney appointed for
appellant.  Appellant, however, changed
his mind and refused the polygraph and attorney.  An investigator then cancelled the request for
an appointed attorney.

That afternoon, Investigator Trevino advised
appellant of his Miranda rights, and appellant told him it was not
necessary because he had already heard them. 
At approximately 4:30 p.m., appellant confessed that he had killed the
child.  

Appellant signed another written waiver of his Miranda
rights late in the evening.  Before
midnight, appellant again admitted to killing the child and told Trevino he
would take him to the body.  After
midnight, at approximately 12:30 a.m., the child=s body
was found on the banks of a dry canal. 
Appellant had taken Trevino to the location.

                                                     B.  Motion
to Suppress

By his first point of error, appellant contends the
trial court erred in denying his motion to suppress the items found in his
car.  Specifically, he asserts the items
were the product of an illegal detention, arrest, and search and seizure.

                                                          1.  Standard of Review








A trial court=s ruling on a motion to suppress is generally
reviewed for abuse of discretion.  See
Ford v. State, 26 S.W.3d 669, 672 (Tex. App. CCorpus Christi 2000, no pet.) (citing Oles v.
State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999)).  In a suppression hearing, the trial court is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given to their testimony.  State
v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  In reviewing a trial court=s ruling on a motion to suppress, we afford almost
total deference to the trial court=s determination of the historical facts that the
record supports, especially when the trial court=s
findings turn on evaluating a witness=s credibility and demeanor.  Estrada v. State, 154 S.W.3d 604,607
(Tex. Crim. App. 2005); State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim.
App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  We afford the same amount of
deference to the trial court=s ruling on Aapplication of law to fact questions,@ also known as Aquestions of law and fact,@ if resolving those ultimate questions turns on
evaluating credibility and demeanor.  Estrada,
154 S.W.3d at 607; Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at
89.  However, we review de novo questions
of law and Amixed questions of law and fact@ that do not turn on an evaluation of credibility
and demeanor.  Estrada, 154 S.W.3d
at 607; Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89.  Determinations of reasonable suspicion and
probable cause should be reviewed de novo on appeal although great weight
should be given to the inferences drawn by the trial court and law enforcement
officers.  Guzman, 955 S.W.2d at
87 (citing Ornelas v. United States, 517 U.S. 690 (1996)).








The totality of the circumstances test is the
current reasonableness standard for reviewing reasonable suspicion arising in
warrantless arrests.  State v. Cerny,
28 S.W.3d 796, 798 (Tex. App.CCorpus Christi 2000, no pet.).  We will sustain the trial court's ruling
admitting the evidence if the ruling is reasonably supported by the record and
correct on any theory of law applicable to the case.  Perez v. State, 130 S.W.3d 881, 885
(Tex. App.CCorpus Christi 2004, no pet.) (citing Willover v.
State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).  Even if the trial court gives a wrong reason
for its decision, so long as a correct theory of law is found, we will sustain
the ruling.  See id.; Ross, 32
S.W.3d at 855‑56.

                                        2.  Investigative Detention Leading to Arrest

We first address whether sufficient reasonable
suspicion existed to warrant a custodial detention.  A police officer may stop and briefly detain
a person for investigative purposes if the officer has a reasonable suspicion
supported by articulable facts that criminal activity may be afoot, even if the
officer lacks evidence rising to the level of probable cause.  Terry v. Ohio, 392 U.S. 1, 29 (1968); Woods
v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997); Cerny, 28 S.W.3d
at 800.  The reasonableness of a
temporary detention must be examined in terms of the totality of the
circumstances and will be justified when the detaining officer has specific
articulable facts, which taken together with rational inferences from those
facts, lead him to conclude that the person detained is, has been, or soon will
be engaged in criminal activity.  Woods,
956 S.W.2d at 38; Cerny, 28 S.W.3d at 800.  In accordance with the Fourth and Fourteenth
Amendments, an investigative detention is categorized as a seizure.  See Johnson v. State, 912 S.W.2d 227,
235 (Tex. Crim. App. 1995).  








A brief detention for investigative purposes,
limited in time and scope, can readily evolve into an arrest.  See United States v. Shareef, 100 F.3d
1491, 1500 (10th Cir. 1996).  An arrest
is a high level of intrusion that will be longer in duration and will generally
commence when a person is actually placed under restraint or taken into custody
by an officer.  See Tex. Code Crim. Proc. Ann. art.
15.22  (Vernon Supp. 2004).  However, use of restraint by an officer is
not always indicative of an arrest since an officer is permitted to use force
reasonably necessary to maintain status quo during investigative
detentions.  Zayas v. State, 972
S.W.2d 779, 789 (Tex. App.BCorpus Christi 1998, pet. ref=d).  A person
is in "custody" only if, given the totality of the circumstances, a
reasonable person would believe his freedom of movement was restrained to the
degree associated with a formal arrest.  Dowthitt
v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury
v. California, 511 U.S. 318, 323-25 (1994)).  The reasonable person standard assumes a
reasonable person innocent of criminal activity.  Florida v. Bostick, 501 U.S. 429, 438
(1991).

The following four situations may constitute
custody:  (1) when the suspect is
physically deprived of his freedom of action in any significant way; (2) when a
law enforcement officer tells the suspect that he cannot leave; (3) when law
enforcement officers create a situation that would lead a reasonable person to
believe that his freedom of movement has been significantly restricted; and (4)
when there is probable cause to arrest and law enforcement officers do not tell
the suspect that he is free to leave.  Dowthitt,
931 S.W.2d at 255 (citing Shiflet v. State, 732 S.W.2d 622, 629 (Tex.
Crim. App. 1985)).








A police officer may arrest without a warrant
persons found in suspicious places and under circumstances which reasonably
show that such persons have been guilty of some felony.  Tex.
Code Crim. Proc. Ann. art. 14.03(a)(1) (Vernon Supp. 2004-05).  Probable cause exists where law enforcement
officers have reasonably trustworthy information, considered as a whole,
sufficient to warrant a reasonable person to believe a particular person has
committed, or is committing, an offense. 
Hughes v. State, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000); Perez,
130 S.W.3d at 886; Guzman, 955 S.W.2d at 87.  Probable cause deals with probabilities; it
requires more than mere suspicion, but far less evidence than that needed to
support a conviction or even that needed to support a finding by a
preponderance of the evidence.  Perez,
130 S.W.3d at 886.  In reviewing a
warrantless arrest to determine the existence of probable cause, the facts
known to the officer at the time of the arrest are evaluated.  Id. 
The totality of the circumstances is reviewed to determine the existence
of probable cause.  See id.

When Officer Reynero stopped his patrol unit after
observing appellant and his vehicle, an investigative detention commenced.  Specific articulable facts existed raising
reasonable suspicion that appellant was involved in criminal activity.  See Cerny, 28 S.W.3d at 800.  The child was missing; appellant was also
missing from the same apartment; no sign of forced entry was present; and an
incident report was filed.  Investigative
questions were asked concerning the whereabouts of the missing child.  The officers did not draw their service
weapons or advise appellant that he was not free to leave.  Appellant did not request to leave.  A reasonable number of officers were present
to conduct the investigation and maintain status quo.  Restraints were not immediately placed on
appellant.  A reasonable innocent person
would not have considered himself in custody at this point.  See Dowthitt, 931 S.W.2d at 254. Given
the totality of the circumstances, we conclude reasonable suspicion existed to
conduct an investigative detention.  








The detention, however, rose to the level of arrest
at two points during the investigation, and for two separate reasons.  The first point was when Corporal Saenz
arrived with knowledge of an arrest warrant. 
Although appellant was not immediately advised of his impending arrest
or handcuffed, he was then considered in custody.  See Dowthitt, 931 S.W.2d at 255.  The second point arose from the finding
of the missing items in appellant=s vehicle. 
Those findings combined with the totality of the circumstances warranted
probable cause.  We conclude appellant
was subject to a valid arrest based on an active arrest warrant.  Moreover, sufficient probable cause existed
to warrant custodial detention in connection with the disappearance of the child.

                                                           3.  Consent to Search

We next address whether appellant gave consent to
have his vehicle searched.  One of the
established exceptions to the warrant and probable cause requirements of the
Fourth Amendment is a search conducted pursuant to consent. Schneckloth v.
Bustamonte, 412 U.S. 218, 219 (1973). 
To show valid consent, the consent must "not be coerced by explicit
or implicit means, by implied threat, or covert force."  Carmouche v. State, 10 S.W.3d 323, 331
(Tex. Crim. App. 2000) (quoting Schneckloth, 412 U.S. at 228).  If the record supports a finding by clear and
convincing evidence that consent to search was free and voluntary, we will not
disturb that finding.  Id. 








The record shows that prior to appellant=s consent to the search of his vehicle, only two
officers were present and appellant was advised of his Miranda
rights.  Appellant was subject to an
investigative detention only and not yet under custodial arrest.  He unequivocally consented to the search by
telling the officer in Spanish to go ahead and check it out.  He even demonstrated his voluntariness by
assisting the officers in unlocking the trunk. 
We find no evidence in the record showing any force, threat, coercion,
or claim of authority.  The State bore
the burden of proving the voluntariness of consent and that burden was
met.  See Ibarra v. State, 953
S.W.2d 242, 245 (Tex. Crim. App. 1997).

Because the officers did not exceed the scope of
their detention of appellant prior to arrest, we conclude appellant voluntarily
and freely consented to the search. 
Accordingly, we hold the trial did not err in denying appellant=s motion to suppress the items found in his
car.  We overrule appellant=s first point of error.       

                                                        C.  Oral
Statements

By his second point of error, appellant contends the
trial court erred in denying his motion to suppress his oral statements.  Specifically, appellant asserts the statements
were obtained in violation of his constitutional rights and were the product of
a warrantless arrest.

A defendant may waive his Miranda rights
provided the waiver is made voluntarily, knowingly, and intelligently.  Ashcraft v. State, 934 S.W.2d 727, 737
(Tex. App.CCorpus Christi 1996, pet. ref=d) (citing Moran v. Burbine, 475 U.S.
412, 421 (1986)).  Only if the totality
of the circumstances surrounding the interrogation reveal both an uncoerced
choice and the requisite level of comprehension may a court properly conclude
that Miranda rights have been waived. 
Id.








Appellant was advised once in Spanish, three or more
times in English, and twice in writing of his Miranda rights.  Consequently, he verbally and expressly
waived  his right to be silent and have
an attorney present.  The trial court
determined that appellant, a thirty-five-year-old adult, had adequate command
of the English language and a sufficient level of education.  No evidence of abuse or coercion is contained
in the record.  The record shows that the
officers ensured the appellant a satisfactory comfort level.  He was provided adequate food, breaks, and
clothing.  Two separate third parties
were  also permitted to speak with
appellant, alone, while in custody at the police station.

When appellant agreed to a polygraph examination and
requested an attorney, the officers complied and made arrangements for one to
be appointed.  However, appellant of his
own free will refused the polygraph and attorney representation. 

Appellant was arrested and held on an active
warrant.  The custodial detention of
appellant in connection with the disappearance of the missing child was
valid.  We conclude appellant knowingly,
intelligently, and  voluntarily waived
his Miranda rights.  We hold the
trial court did not err in denying appellant=s
motion to suppress his oral statements. 
We overrule appellant=s second point of error.             

                                               D.  Media
Exclusion Request

By his third point of error, appellant contends the
trial court erred in denying his request to exclude the media at his
suppression hearing.  A ruling on a motion
based on pretrial publicity is reviewed for abuse of discretion.  See Lopez v. State, 628 S.W.2d 77, 81
(Tex. Crim. App. 1982).








The Sixth Amendment provides, in pertinent part,
"the accused shall enjoy the right to a speedy and public trial."  U.S. Const.
amend. VI. Art. I; see  Tex. Const. art. I, ' 10 (providing that the accused shall have a
speedy public trial by an impartial jury). 
Open trials have played an important role in the administration of justice
and have been deeply rooted in our nation=s history even before separation from England.  See Press-Enterprise Co. v.
Superior Court of California, 464 U.S. 501, 508 (1984).  The value of openness lies in the fact that
people not actually attending trials can have confidence that standards of
fairness are being observed.  Id.  The sure knowledge that anyone is free to
attend gives assurance that established procedures are being followed and that
deviations will become known.  Id.  The requirement of a public trial is for
the benefit of the accused.  Waller,
467 U.S. at 46.  The public is able to
see that the accused is fairly dealt with and not unjustly condemned.  Id. 
The presence of spectators also ensures the accused is keenly
represented and his triers are focused on their responsibility.  See id.  Lastly, witnesses are discouraged from
committing perjury.  Id. at 47.

The media is an extension of the public body.  The press and public have rights afforded them
under the First Amendment to attend public hearings and view public
documents.  Nevertheless, there can be
little doubt that the explicit Sixth Amendment right of the accused is no less
protective of a public trial than the implicit First Amendment right of the
press and public.  Gannett Co. v.
DePasquale, 443 U.S. 368, 380 (1979). 
But vital as it is to protect freedom of the press, especially in
reporting about the criminal justice system, the rights of the press may
collide with the criminal defendant=s equally significant right to a fair trial.  United States v. Brown, 250 F.3d 907,
915 (5th Cir. 2001).  The central aim of
a criminal proceeding is to ensure that the accused is tried fairly and
impartially.  See id.; Tex. Const. art. I, ' 10.  Circumstances
do arise where closed proceedings are warranted, but the closures must be rare
and only for cause shown that outweighs the value of openness.  Press-Enterprise, 464 U.S. at 509.








            Suppression hearings often are as
important as the trial itself.  Waller,
467 U.S. at 46.  The need for an open
proceeding is particularly strong because a challenge to the seizure of
evidence, just as the case at bar, frequently attacks the conduct of police and
the prosecutor.  See id. at
47.  The presumption of an open
proceeding may be overcome, though, only by an overriding interest based on
articulated findings that closure is essential and is narrowly tailored to
serve that interest.  See
Press-Enterprise, 464 U.S. at 510.

Appellant cites the Waller case for the
applicable factors to determine if closing a suppression hearing is
necessary.  The Waller test
requires the following:  (1) the party
seeking to close a court proceeding must advance an overriding interest that is
likely to be prejudiced, (2) the closure must be no broader than necessary to
protect that interest, (3) the trial court must consider reasonable
alternatives to closing the proceeding, and (4) it must make findings adequate
to support the closure.  See Waller,
467 U.S. at 46.

We note that the Waller case has been
distinguished.  See United States v.
Osborne, 68 F.3d 94 (5th Cir. 1995). 
In Osborne, the Fifth Circuit concluded that Waller
applies only to full closure of proceedings, not partial closures.  See id. at 98.  The partial closing of court proceedings does
not raise the same constitutional concerns as a total closure, because an
audience remains to ensure the fairness of the proceedings.  Id. 
The Fifth Circuit adopted the less-stringent test advanced by the
Second, Eighth, Ninth, Tenth, and Eleventh Circuit Courts which requires the
party seeking a partial closure to show only a Asubstantial
reason.@  Id. at
98-99.  All else remains constant in the Waller
test; substantial reason only substitutes the Aoverriding interest@
standard of the first factor.  See Woods
v. Kuhlmann, 977 F.2d 74, 76-78 (2nd Cir. 1992).








To determine what constitutes a substantial reason,
factors such as the age of the witness, the nature of an alleged offense, and
the potential for harm to the witness should be weighed.  United States v. Farmer, 32 F.3d 369,
371 (8th Cir. 1994); United States v. Sherlock, 962 F.2d 1349, 1357 (9th
Cir. 1992); see Woods, 977 F.2d at 77 (determining substantial reason
arises when it is for protection of witness who claims to be frightened as
result of perceived threats); Nieto 
v. Sullivan, 879 F.2d 743, 753 (10th Cir. 1989); Douglas v.
Wainwright, 739 F.2d 531 (11th Cir. 1984).

In the instant case, appellant asserts the reason
for excluding the media during his testimony was to avoid having his testimony
appear on television or in the newspaper which could prejudice and taint the
jury pool, thus denying him an impartial trial. 
Appellant argued at the suppression hearing that his testimony was
primarily for the court, and the broadcasting interfered with his ability to
testify.

Although jury pool tainting is a valid concern,
appellant=s argument does not constitute a substantial reason
for partially closing the proceeding. 
The United States Supreme Court acknowledges that one of the reasons
most advanced for closing a trial B avoiding tainting the jury by pretrial publicity B is largely attenuated where the jurors have been
empaneled and instructed not to discuss the case or observe press accounts of
the matter by any means.  See Waller,
467 U.S. at 47 n.6.








The record reflects that before the suppression
hearing, the venire was sworn and specifically instructed not to discuss the
case or read or view press materials about the case.  Instructions of the court are presumed to be
obeyed unless there is something in the record to rebut the presumption.  See Williams v. State, 937 S.W.2d 479,
490 (Tex. Crim. App. 1996); Gardner v. State, 730 S.W.2d 675, 696 (Tex.
Crim. App. 1987) (setting out jury presumed to follow instruction to disregard
evidence); Lopez v. State, 664 S.W.2d 815, 817 (Tex. App.CCorpus Christi 1984, no pet.) (providing jury
presumed to obey instruction to disregard 
improper testimony).  Furthermore,
the trial court advised appellant that he could voir dire the venire to
determine whether any potential juror had disregarded the court=s instructions.[5]  

Because appellant was concerned with the pressures
of having microphones and cameras present, the court informed him that he would
be treated fairly in the courtroom and that any sense of nervousness would be
taken into consideration.[6]  Appellant advanced a concern not unlike that
shared by those facing similar allegations. 
However, he failed to distinguish his concern, given the safeguards in
place at the time to ensure he received a fair and impartial trial.

Because appellant did not advance a substantial
reason that was likely to be prejudiced, it is not necessary to address the
remaining factors of the Waller test. 
We hold the trial court did not abuse its discretion in denying
appellant=s request for a closed hearing on his motion to
suppress.  Appellant=s third point of error is overruled.

The judgment of the trial court is affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

Publish.  See Tex.
R. App. P. 47.2(b).

 

Opinion
delivered and filed this

the
22nd day of August, 2005.

 











[1]
See Tex. Pen.
Code Ann. ' 19.03(a)(8) (Vernon 2004).





[2] The handheld receiver to the
telephone, the mother=s wallet, the child=s shoes, and some documents were
the items reported missing.





[3]
See Miranda v. Arizona, 384 U.S. 436, 444 (1966).





[4]
The telephone receiver was in
the glove compartment, the child=s documents were under the front seat, and a plastic bag
with pictures of the mother and child were found under the hood.               





[5]
Appellant does not cite to
any evidence in the record showing that the venirepersons disregarded the court=s instruction or were tainted in
any manner. 





[6]
After appellant testified at
the suppression hearing, the trial court commented on the record that appellant
had Agood control of the questions that
were asked of him@ and Aseemed to follow a flow.@ 
He also said appellant Aknew what he wanted to say and said it.@