COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS


 

CORPUS CHRISTI - EDINBURG 


 


NUMBER 13-06-033-CV



IN THE INTEREST OF E.P., A CHILD


 


NUMBER 13-06-034-CV



IN THE INTEREST OF S.H.L.P., A CHILD


 


On appeal from the 107th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Justice Yañez


 

 

 Appellee, the Texas Department of Family and Protective Services ("the
Department"), brought two suits against appellant, Maria Virginia Perez, the biological
mother of E.P. and S.H.L.P., for termination of her parental rights. (1) Following a bench trial
addressing both suits, the trial court found that one or more statutory grounds for
termination existed and that termination was in the children's best interest. On appeal,
appellant challenges the trial court's orders terminating her parental rights through three
issues. In her first two issues, appellant challenges the legal and factual sufficiency of the
evidence to support the court's finding that termination was in the children's best interest. 
In her third issue, appellant argues that this Court should remand and instruct the trial court
to reconsider termination after providing appellant with a psychological evaluation. We
affirm.

I. Background

 E.P., the son of appellant and Elias Perez ("the Perezes"), was born on March 17,
1997. On October 3, 2000, the Perezes had a second child named Stacey. On March 5,
2001, Stacey was rushed to a hospital because she stopped breathing; she was
resuscitated but has since remained on life support in a vegetative state. Appellant was
placed in prison pending criminal charges relating to Stacey's injuries; at some point
thereafter, appellant voluntarily terminated her parental rights to Stacey. On August 6,
2001, while in prison awaiting trial, appellant gave birth to a daughter, S.H.L.P. (hereinafter
"S.P."). At the time of S.P.'s birth, Elias was in prison because his probation was revoked
for failure to pay restitution. Appellant was unable to locate any family members who were
willing to care for S.P.; as a result, Child Protective Services immediately placed her in
foster care. E.P. was placed in foster care in January 2002, after a relative he was staying
with could no longer care for him. Appellant remained in prison during this time. She
eventually agreed to a plea bargain, (2) wherein she pleaded guilty to reckless injury to a
child. Appellant was convicted on June 24, 2002; she was sentenced to fifteen years'
imprisonment and was credited 452 days for time served.

 On June 7, 2005, the Department filed a "First Amended Petition for Protection of
a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child
Relationship," seeking to terminate appellant's parental rights as to E.P. and requesting
that it be appointed E.P.'s sole managing conservator. An identically named petition,
seeking to terminate appellant's parental rights as to S.P. and requesting appointment as
S.P.'s sole managing conservator, was filed by the Department on August 9, 2005. The
children's cases were consolidated for the purpose of the hearing. A few weeks prior to
the hearing, Elias passed away. On December 1, 2005, after a bench trial, the trial court
found that appellant's parental rights should be terminated as to both children and that the
Department should be appointed as the children's sole managing conservator. The trial
court entered its orders in January 2006.

II. Legal and Factual Sufficiency of the Evidence to Support Termination

A. Standards of Review (3)

 A parent's right to "the companionship, care, custody, and management" of her
children is a constitutional interest "far more precious than any property right." (4) The United
States Supreme Court has emphasized that "the interest of parents in the care, custody,
and control of their children . . . is perhaps the oldest of the fundamental liberty interests
recognized by this Court." (5) Likewise, the Texas Supreme Court has also concluded that
"this natural parental right" is "essential," "a basic civil right of man," and "far more precious
than property rights." (6) Consequently, termination proceedings must be strictly scrutinized,
and "involuntary termination statutes are strictly construed in favor of the parent." (7)
 Because termination "is complete, final, irrevocable, and divests for all time that
natural right . . . the evidence in support of termination must be clear and convincing before
a court may involuntarily terminate a parent's rights." (8) Clear and convincing evidence is
"the measure or degree of proof that will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established." (9) Because
termination findings must be based upon clear and convincing evidence, not simply a
preponderance of the evidence, the Texas Supreme Court has held that the traditional
legal and factual standards of review are inadequate. (10)

 In conducting a legal sufficiency review in a termination-of-parental-rights case, we
must determine whether the evidence, viewed in the light most favorable to the finding, is
such that the fact finder could reasonably have formed a firm belief or conviction about the
truth of the matter on which the movant in a termination proceeding bore the burden of
proof. (11) In viewing the evidence in the light most favorable to the judgment, we "must
assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact
finder could do so," and we "should disregard all evidence that a reasonable fact finder
could have disbelieved or found to be incredible." (12)

 In conducting a factual sufficiency review in a termination-of-parental-rights case,
we must determine whether, considering the entire record, including both evidence
supporting and evidence contradicting the finding, a fact finder reasonably could have
formed a firm conviction or belief about the truth of the matter on which the movant in a
parental termination proceeding bore the burden of proof. (13) We should consider whether
the disputed evidence is such that a reasonable fact finder could not have resolved the
disputed evidence in favor of its finding. (14) "If, in light of the entire record, the disputed
evidence that a reasonable fact finder could not have credited in favor of the finding is so
significant that a fact finder could not reasonably have formed a firm belief or conviction,
then the evidence is factually insufficient." (15)

B. Statutory Termination Grounds

 Section 161.001(1) of the Texas Family Code states that a court may order
termination of the parent-child relationship if the court finds by clear and convincing
evidence that the parent has:

 (L) been convicted or has been placed on community supervision,
including deferred adjudication community supervision, for being criminally
responsible for the death or serious injury of a child under the following
sections of the Penal Code or adjudicated under Title 3 for conduct that
caused the death or serious injury of a child and that would constitute a
violation of one of the following Penal Code sections: . . . (ix) Section 22.04
(injury to a child, elderly individual, or disabled individual);

 

 . . . .

 

 (N) constructively abandoned the child who has been in the
permanent or temporary managing conservatorship of the Department of
Family and Protective Services or an authorized agency for not less than six
months, and: (i) the department or authorized agency has made reasonable
efforts to return the child to the parent; (ii) the parent has not regularly visited
or maintained significant contact with the child; and (iii) the parent has
demonstrated an inability to provide the child with a safe environment; [and]

 

 . . . .

 

 (Q) knowingly engaged in criminal conduct that has resulted in the
parent's: (i) conviction of an offense; and (ii) confinement or imprisonment
and inability to care for the child for not less than two years from the date of
filing the petition[.] (16)


The trial court used subsections N and Q as grounds for terminating appellant's parental
rights to E.P., and subsections L and N for terminating appellant's parental rights to S.P. 
On appeal, appellant does not contend that the trial court's application of subsections N,
L, and Q is not supported by legally or factually sufficient evidence. Consequently, our
focus is solely directed at assessing whether the evidence demonstrated that termination
of appellant's parental rights was in her children's best interest.

C. Best Interest of the Children

1. Applicable Law

 In parent-child termination proceedings, there is a strong presumption that the
children's best interest is usually served by keeping them with their natural parents. (17) The
Texas Supreme Court has recognized several factors to consider in determining whether
termination is in a child's best interest. (18) These include: (1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the emotional and
physical danger to the child now and in the future; (4) the parental abilities of the
individuals seeking custody; (5) the programs available to assist those individuals to
promote the best interest of the child; (6) the plans for the child by these individuals or by
the agency seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate the existing parent-child relationship is
not proper; and (9) any excuse for the acts or omissions of the parent. (19) This list of factors
is not exhaustive, and no single consideration is controlling. (20) Likewise, a fact finder is not
required to consider all of the listed factors. (21)

2. Trial Testimony and Evidence

 Irma Serrata, a case worker with the Department, was the only witness at
appellant's hearing. She stated that Stacey had been referred to the Department because
of physical abuse caused by appellant. At trial, the Department connected Stacey's
referral to appellant's plea of guilty for the offense of injury to a child. According to Serrata,
"[appellant] had attempted to suffocate [Stacey]," an act that has impacted the
Department's recommendation that appellant's parental rights to E.P. and S.P. be
terminated. Serrata further stated that while appellant was in prison, the Department
ordered her to undergo "psychological/psychiatric evaluation, parenting classes, substance
abuse assessment, random drug testing, and counseling"; Serrata was not aware,
however, as to whether appellant's prison offered any of these services. (22) Serrata agreed
that appellant "had made efforts to make positive personal changes" while in prison, noting
that appellant (1) participated in numerous Bible courses; (2) sent a letter to prison
personnel requesting parenting classes at prison (the request was denied); (3) wrote letters
to her attorney, the trial court, and CPS expressing her desire to maintain her parental
rights and keep in contact with the children; and (4) wrote numerous letters to the children
throughout her time in prison, wherein she provided encouragement and expressed her
affection toward them.

 With regard to E.P. and S.P., Serrata testified that they were doing well and in good
health, though she did later state that they had developmental and medical issues. At the
time of trial, both children were living together in short-term placement and were in their
second foster home. (23) With appellant's active assistance, the Department had looked for
relatives who would be willing to care for the children, but the search had been
unsuccessful. The Department did locate an out-of-state relative who expressed an
interest in caring for the children, but only if she could adopt them. Serrata stated that the
children had weekly visits with appellant when she was imprisoned in Cameron County, but
that these visits ceased when appellant was transferred to Marlin, Texas. Though
appellant is unable to communicate with the children in person or over the telephone, she
does regularly communicate with them through her letters. According to Serrata, E.P. has
not expressed a desire to live with appellant--but he has expressed a desire to live with
his foster family--and S.P. has not communicated her living preference. Lastly, Serrata
stated that the Department could offer services to appellant once she was out of prison;
depending on the progress she may make with the services, a possibility exists that
appellant may be able to care for the children.

3. Discussion

 Though we acknowledge both appellant's love for her children and desire to change
her life for the better, the fact remains that there are many other matters we must consider
in determining the best interest of the children. The matter of primary concern for us is the
length of time that appellant will be incarcerated. (24) While we recognize that a fifteen-year
sentence is not synonymous with a fifteen-year period of incarceration, the trial court, as
the fact finder, was free to assume otherwise. (25) If appellant remained incarcerated for
fifteen years, she would not be released until March 2016; at such time, E.P. and S.P.
would be approximately nineteen and fourteen years old, respectively. In light of this
potential reality, and upon reviewing the Holley factors, this Court finds that termination of
appellant's parental rights is in the children's best interest.

 It is clear that appellant is not able to provide care to her children from prison. 
Serrata stated that the Department wanted to find an adoptive home for the children, and
that there was a family currently interested in adopting them. Adoption of the children
could not occur, however, without terminating appellant's parental rights. When asked why
the Department was requesting that appellant's parental rights be terminated, Serrata
stated: "Because the children need permanency in their lives. Foster care is not a
permanent placement for them. So we're trying to be able to provide placement with a
family that can give them a more permanent home."

 The Holley test focuses on the best interest of the child, not the best interest of the
parent. From the evidence presented at trial, the trial court could properly determine that
the impermanent foster care arrangement that would be mandated if appellant retained any
parental rights was not in the children's best interest. (26) We find that the trial court--in
concluding that appellant's parental rights should be terminated--properly considered the
desires of the children, the emotional and physical needs of the children now and in the
future, the emotional and physical danger to the children now and in the future, and the
plans of the agency seeking custody.

 Having carefully considered the evidence in light of the Holley factors and applying
the appropriate standards of review, (27) we hold that the trial court could have reasonably
formed a firm belief or conviction that termination was in the best interest of E.P. and S.P. 
Accordingly, we overrule appellant's first and second issues.

III. Affording Appellant a Psychological Evaluation

 In her third issue, appellant complains that she never received psychological
services while incarcerated. We interpret her complaint as contending that the denial of
a psychological examination disadvantaged her at the termination hearing because she
was unable to prove that she was competent and stable, as opposed to the depressed
mental state she was in at the time she recklessly injured Stacey. Because appellant's
parental abilities cannot be properly assessed without knowing her state of mental health,
appellant requests that we remand the causes to the trial court to determine whether she
currently suffers from depression or other mental illness. Appellant posits that upon
making this determination, the trial court can then "evaluate her [as] a possible possessory
conservator, who will have limited visitation, even if supervised, something which may
under the circumstances be in the best interests of the children."

 Though we believe a psychological examination would have aided the trial court in
assessing appellant's parental abilities, we do not believe the trial court needed to make
this assessment to properly determine whether termination was in the children's best
interest. Even if we were to assume, arguendo, that a psychological examination
supported a finding that appellant was mentally fit to reunite with her children, this would
not eliminate the aforementioned considerations supporting termination. Evidence of
appellant's mental competency does not (1) prove that she will be released from prison in
the near future, (2) indicate that she will be able to care for her children while incarcerated,
or (3) diminish concerns associated with leaving the children in an impermanent foster care
arrangement. We thus overrule appellant's third issue.

IV. Conclusion

 We affirm the trial court's judgments.





 

 LINDA REYNA YAÑEZ,

 Justice





Memorandum Opinion delivered and filed 

this the 21st day of February, 2008.

1. E.P. is the subject of appeal No. 13-06-033-CV, trial court cause number 2002-02-11-NA. S.H.L.P.
is the subject of appeal No. 13-06-034-CV, trial court cause number 2001-08-41-NA. Though there was no
motion for consolidation, one opinion is being issued in the interest of judicial economy because the facts and
law relevant to the disposition of both appeals are the same.
2. Matters relating to the plea agreement were raised in an appeal to this Court. See Perez v. State,
130 S.W.3d 881 (Tex. App.-Corpus Christi 2004, no pet.). Perez contains factual information relating the
circumstances surrounding Stacey's injuries. We note that the opinion, however, incorrectly states that Stacey
died from her injuries. Id. at 883.
3. Appellant asserts a factual sufficiency challenge through her first issue and a legal sufficiency
challenge through her second issue. In her second issue, appellant requests this Court to "undertake a de
novo legal sufficiency review of the issues in this case." Appellant argues "that the United States Constitution
requires appellate courts to conduct a de novo review in parental termination cases like the de novo review
that the United States Supreme Court has held is required in defamation cases." Contrary to appellant's
position, there is no "definitive word from the United States Supreme Court on whether the Constitution
requires this independent appellate review." In re C.H., 89 S.W.3d 17, 29 (Tex. 2002) (Hecht, J., concurring). 
The Texas Supreme Court has left open the question of whether the Constitution requires de novo review and
whether the standards it has announced would comport with de novo review standards. See In re J.F.C., 96
S.W.3d 256, 267-78 (Tex. 2002). Given the facts of this case, we do not believe that a determination as to
whether the evidence is sufficient to support the judgment turns on what deference is paid to the trial court's
findings. Accordingly, we decline appellant's invitation to depart from established law setting forth the
heightened standards of review applicable to termination of parental rights.
4. Santosky v. Kramer, 455 U.S. 745, 758-59 (1982).
5. Troxel v. Granville, 530 U.S. 57, 65 (2000).
6. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).
7. Id.
8. Id. (citing Santosky, 455 U.S. at 747; Richardson v. Green, 677 S.W.2d 497, 500 (Tex. 1984)).
9. Tex. Fam. Code Ann. § 101.007 (Vernon 2002); In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002).
10. In re J.F.C., 96 S.W.3d at 264-66; In re D.S.P., 210 S.W.3d 776, 778 (Tex. App.-Corpus Christi
2006, no pet.).
11. See In re J.F.C., 96 S.W.3d at 266; In re D.S.P., 210 S.W.3d at 778.
12. In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005) (citing In re J.F.C., 96 S.W.3d at 266).
13. Id.; In re C.H., 89 S.W.3d 17, 25 (Tex. 2002); In re D.S.P., 210 S.W.3d at 778-79.
14. In re J.F.C., 96 S.W.3d at 266-67.
15. Id. at 266.
16. Tex. Fam. Code Ann. § 161.001(1)(L), (N), (Q) (Vernon 2002).
17. Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976).
18. Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976).
19. Id.
20. Id.
21. Id.
22. Serrata did definitively state that the Department had never provided appellant with a psychological
examination.
23. According to Serrata, the children are in a therapeutic foster home, meaning that the foster family
is "working on [the children's] therapeutic needs, providing them therapy, getting them more services that they
may need"; additionally, the "foster family is working a lot one on one with the children and is more involved
with them at school."
24. See In re J.P.H., 196 S.W.3d 289, 294 (Tex. App.-Eastland, no pet.) ("A lengthy sentence is a
serious matter and requires that measures be taken to ensure the child's care.").
25. See In re H.R.M., 209 S.W.3d 105, 109 (Tex. 2006).
26. See D.O. v. Tex. Dep't of Human Servs., 851 S.W.2d 351, 358 (Tex. App.-Austin 1993, no writ).
27. See J.F.C., 96 S.W.3d at 265-66; C.H., 89 S.W.3d at 25.