**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 94-41041

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT CARROLL OSBORNE, and
TIMOTHY EARL NORRIS,

Defendants-Appellants.

Appeal from the United States District Court
For the Eastern District of Texas

(October 18, 1995)

Before WISDOM, DUHÉ, and BARKSDALE, Circuit Judges.
WISDOM, Circuit Judge:

Robert Carroll Osborne and Timothy Earl Norris were both convicted of kidnapping and of using a firearm during a kidnapping. Both men now challenge their convictions, and Mr. Osborne also challenges his sentence. We find no reversible error and AFFIRM.

## I. Background

On March 15, 1994, Robert Carroll Osborne and Timothy Earl Norris, the defendants/appellants, along with a third man, Denver Weaver, began a two day crime spree that took them to three different states. That morning, in Texarkana, Texas, the three men left a local motel with the purpose of looking for employment. This search was short-lived, however, as their first stop was a local liquor store, where Norris purchased some beer.

After this stop, the three men drove to a residence in Texarkana where they used a knife to rob a wheelchair-bound "dope dealer" of a .22 caliber revolver, a VCR, money, jewelry, and several bags of marijuana. They sold the VCR at a local pawn shop, and unsuccessfully tried to test fire the gun.

The men then went to Dekalb, Texas, where Norris had acquaintances. As they drove and visited Norris's friends, they smoked the stolen marijuana and drank the beer they had purchased earlier. The three men eventually arrived at the home of Jane Doe, a twelve year old girl. Norris knew Jane because his sister was also Jane's aunt by marriage.

The men visited with some women who were at Jane's house, and then left for a while. When they returned later in the day, the women were gone, but Jane was still at the house. Norris persuaded Jane to get in the car and show him where her aunt was. Norris sat in the back seat with Jane. Osborne drove, and Weaver rode in the passenger seat.

When Jane instructed Osborne to turn right at an intersection, Norris told Osborne to turn left. Jane corrected Norris, and he told her to shut up. Jane told the men that she had to be home for choir practice. In response, Norris showed Jane the gun they had stolen in Texarkana. Jane again asked to go home. Norris told her to shut up and relax, then removed her pants and sexually assaulted her in the back seat of the car. Norris kept the gun with him during the assault.

Osborne then drove the group to an abandoned house in the

country where his mother had recently lived. Norris lead Jane by the arm into the bedroom of the house. Osborne followed behind, and brought the gun with him. Norris pointed the gun at Jane and told her to disrobe and get on an old mattress that was in the room. He threatened to kill her if she refused. Norris and Osborne then took turns sexually assaulting Jane. They kept the gun on the mattress during the assaults. Weaver was intoxicated, and stayed in the front room of the house during the assaults.

Afterwards, they all dressed and returned to the car. Jane again asked to go home. Norris told her that she was not going to go home. He said that she was "going to be their girl" and was going to "make them some money" by selling her body.

The group then drove to a truck stop, where they abandoned Weaver. Norris and Osborne then took Jane back to the motel they had stayed in the previous night. In the room, both men again sexually assaulted Jane. Afterwards, Norris told Jane that he knew where she lived and that he would kill her if she tried to run away.

The next morning, Norris, Osborne, and Jane left the motel. They had car trouble, and tried to get help in Texarkana. While they waited, the group had breakfast in a crowded hospital cafeteria. Jane did not attempt to escape or ask for help.

Norris and Osborne eventually persuaded a man to tow them to an auto parts store in exchange for some marijuana. They left Jane alone with the man while they were in the store. At this time, Jane tried to get help, and told the man what had happened to

3

her. He ignored her story, left her with Osborne and Norris, and did not call the police.

After the car was repaired, Jane repeated her request to go home. Norris again told her that she was not going to go home, and that she was going to "make them some money."

Jane fell asleep. While she was sleeping, Osborne and Norris drove to Arkansas, and burglarized a home. They took two guns, a television, a VCR, and a keyboard. They then drove to Louisiana. In Louisiana, they attempted to sell the stolen items at several locations. They also bought ammunition at a K-Mart, and picked up another individual whom they also threatened.

Later, Osborne and Norris went to a housing project with the two guns. They returned with a wallet and a bottle of cocaine. While attempting to speed away from the project, they got into a wreck. Before the police arrived, Norris and Osborne hid the guns and the keyboard in a nearby truck.

When the police arrived, an officer took Jane into protective custody, and arrested Norris and Osborne. The officer searched the car and found a bag of marijuana residue, a stolen identification card, and two boxes of ammunition. He also found two .38 caliber revolvers and the stolen keyboard in the nearby truck. The .22 caliber revolver was never recovered.

On April 5, 1994, a grand jury indicted Osborne and Norris for aiding and abetting,[1] kidnapping,[2] and possession of a

18 U.S.C. § 2.

18 U.S.C. § 1201(a)(1).

4

firearm during a violent crime.[3]  The two men were tried together, beginning on June 13, 1994.

On the primary evidence against Norris and Osborne was the testimony of Denver Weaver and of Jane Doe.  Before Jane Doe took the stand, the prosecution asked the district court to close the proceedings while she testified.  Over the defendants' objections, the district court ordered that Norris's sister leave the courtroom, and prohibited any new spectators from entering during Jane's testimony.  The district court allowed the remaining audience, which included relatives of both defendants, to stay.

On June 17, 1994, the jury returned guilty verdicts on all counts against both Norris and Osborne.  On September 23, 1994, the district court sentenced Norris to 322 months in prison, and Osborne to 295 months in prison, each followed by five years of supervised release.  In calculating Osborne's sentence, the district court included a prior uncounseled conviction in Osborne's criminal history.

Osborne and Norris both appeal the district court's decision partially to close the courtroom during the testimony of Jane Doe, contending that this action violated their Sixth Amendment right to a public trial.  In addition, Norris appeals the sufficiency of the evidence supporting his conviction, and Osborne appeals the district court's consideration of the prior uncounseled conviction in computing his sentence.  We consider each of these appeals in turn.

18 U.S.C. § 924(c)(1).

## II.  The Right to a Public Trial

Norris and Osborne argue that the district court violated their constitutional right to a public trial when it partially closed the courtroom during the testimony of Jane Doe.  We review this question of constitutional law *de novo.*

The Sixth Amendment to the United States Constitution guarantees a public trial to all criminal defendants.[4]  This right exists to ensure the fairness of the proceedings and to encourage witnesses to come forward with information.[5]  The right to a public trial is not absolute, however, and must be balanced against other interests essential to the administration of justice.[6]

In *Waller v. Georgia*, the United States Supreme Court adopted the following test for determining when the defendant's right to a public trial is outweighed by other considerations: 1) a party seeking to close a court proceeding must advance an overriding interest that is likely to be prejudiced; 2) the closure must be no broader than necessary to protect that interest; 3) the trial court must consider reasonable alternatives to closing the proceeding; and 4) it must make findings adequate to support the

---

We note that the First Amendment also guarantees to the press a related right of access to criminal proceedings.  *Press Enterprises Co. v. Superior Ct. of Calif., Riverside Cty.,* 464 U.S. 501 (1984).  At oral argument, the defendants developed an argument that the press should have had access to the proceedings.  They did not raise this argument at the time the district court closed the courtroom, however.  Therefore, we will not address this issue for the first time on appeal.

*Waller v. Georgia,* 467 U.S. 39, 46 (1984).

*Id.* at 45.

6

closure.[7]

There is a significant difference between *Waller* and the instant case, however. In *Waller,* the Supreme Court addressed a *total closure* of a suppression hearing, from which all members of the public were excluded.[8] In the present case, the district court ordered only a *partial closure* of the proceedings, allowing all but one of the existing spectators to remain during the victim's testimony.

Prior to the *Waller* decision, this circuit addressed the constitutionality of a partial closure in *Aaron v. Capps.*[9] In *Aaron,* this court held that, when considering a partial closure, a trial court should look to the particular circumstances of the case to see if the defendant will still receive the safeguards of the public trial guarantee.[10] This court reasoned that the partial closing of court proceedings does not raise the same constitutional concerns as a total closure, because an audience remains to ensure the fairness of the proceedings.[11]

Although this circuit has not had the opportunity to reexamine the constitutionality of a partial closing since the *Waller* decision, five other circuits have addressed the issue. The

---

*Id.* at 46.

*Id.* at 42.

507 F.2d 685 (5th Cir.), *cert denied,* 423 U.S. 878 (1975).

*Id.* at 688.

*Id.*

Second, Eighth, Ninth, Tenth, and Eleventh Circuits have all found that *Waller's* stringent standard does not apply to partial closures, and have adopted a less demanding test requiring the party seeking the partial closure to show only a "substantial reason" for the closure.[12]  As in this circuit's *Aaron* decision, these courts have all based their decisions on a determination that partial closures do not implicate the same fairness and secrecy concerns as total closures.[13]

We agree.  We do not read *Waller* as altering this court's analysis of partial closings as discussed in *Aaron.*  We now, however, also adopt the "substantial reason" test set forth by other courts as a method of determining if a partial closure meets the constitutional standards of *Aaron.*

Applying this test to the instant suit, we find that the partial closure was justified.  The government initially made a request for a full closure, arguing that it was concerned that forcing the twelve year old Jane to testify in front of the public would traumatize or intimidate her, perhaps causing psychological harm or making her unable to communicate.[14]  Although the district

---

*United States v. Farmer,* 32 F.3d 369 (8th Cir. 1994); *Woods v. Kuhlmann,* 977 F.2d 74 (2d Cir. 1992); *United States v. Sherlock,* 962 F.2d 1349 (9th Cir. 1989), *cert. denied,* --U.S.--, 113 S. Ct. 419 (1992); *Nieto v. Sullivan,* 879 F.2d 743 (10th Cir.), *cert. denied,* 493 U.S. 957 (1989); *Douglas v. Wainwright,* 739 F.2d 531 (11th Cir. 1984), *cert. denied,* 469 U.S. 1208 (1985).

*Farmer,* 32 F.3d at 371; *Woods,* 977 F.2d at 76; *Sherlock*, 962 F.2d at 1357-58; *Nieto,* 879 F.2d at 753-54; *Douglas,* 739 F.2d at 533.

We note that the government moved to close the proceedings pursuant to 18 U.S.C. § 3509(e), which authorizes the

8

court did not create a detailed record on this issue, we infer that it eventually ordered the partial closure on this basis. The protection of a minor from emotional harm is a substantial enough reason to defend a limited closing of the proceedings.

Furthermore, the district court did not limit access to the proceedings beyond the justifiable limits. The court refused the government's request for total closure of the proceedings. With one exception, the court allowed all existing spectators to remain in the courtroom, only prohibiting access to those who may have attempted to enter during Jane Doe's testimony. There is no evidence that anyone was denied access based on this ruling. The one person asked to leave the proceedings was both the sister of the defendant Norris and the aunt of the victim. It was not error to remove this person when her presence may have traumatized the witness, and when other members of the defendants' families were allowed to remain.

We find that in the circumstances this case presents, the defendants were not denied their Sixth Amendment right to a public trial. We emphasize, however, that courts should not lightly close public proceedings such as trials. Furthermore, when addressing a request for a partial closure, courts should take care to develop

---

closing of a courtroom when a minor testifies, if the court determines on the record that "requiring the child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate." The defendants do not challenge the court's application of the statute, but instead challenge only the constitutionality of the closure as a whole. We therefore do not decide if the court correctly complied with the statute.

a record of the issues, and make detailed factual findings.  In spite of these admonitions, on the facts this case presents, we uphold the district court's decision to partially close trial proceedings.

### III.  The Sufficiency of the Evidence against Norris

Appellant Norris asserts that there was insufficient evidence to support his convictions for kidnapping and for using a firearm during the kidnapping.  A guilty verdict must be sustained if the evidence considered in the light most favorable to the verdict would have allowed a rational fact finder to find the defendant guilty beyond a reasonable doubt.[15]  It is the role of the jury, not the appellate court, to weigh the evidence and determine the credibility of the witnesses.[16]  Therefore, if there is evidence to support the verdict, this court will sustain it.[17]  We find that the evidence clearly supports both of Norris's convictions.

To obtain a conviction for kidnapping, the government must prove four elements: 1) the transportation in interstate commerce; 2) of an unconsenting person who is; 3)held for ransom, reward, or otherwise, and 4) the acts were done knowingly and willingly.[18]  The government has met its burden in this case.

---

*United States v. Ivy,* 929 F.2d 147, 150 (5th Cir.), *cert. denied,* 512 U.S. 883 (1991).

*United States v. Williams,* 998 F.2d 258, 261 (5th Cir. 1993), *cert. denied,* --U.S.--, 114 S. Ct. 1940 (1994).

*Id.* at 261-62.

18 U.S.C. § 1201(a)(1); *see also, United States v. Jackson,* 978 F.2d 903, 910 (5th Cir.), *cert. denied,* --U.S.--, 113 S. Ct. 2499, 3055 (1993).

The evidence shows that Norris and Osborne took Jane over not one, but two state lines, as they drove from Texas into Arkansas, and then into Louisiana. Jane testified that she repeatedly asked to go home, but Norris told her that she could not, and that he would kill her if she tried to run away. She said Norris and Osborne frequently kept a gun within her sight and threatened her with it. Jane also testified that both men repeatedly sexually assaulted her, and that Norris told her that she was going to "make money" for them.

Norris argues that this evidence cannot support his conviction for kidnapping because Jane initially entered his car voluntarily, never attempted to escape, and was asleep when he drove her across state lines. These facts do not trump the evidence that Jane was taken against her will, particularly when one considers that Jane was only twelve at the time of the kidnapping. The jury's verdict is sustained.

Norris also argues that there is insufficient evidence to prove that he used a firearm during the kidnapping. To be guilty of using a firearm during the commission of a violent crime under 18 U.S.C. § 924(c)(1), the government needs to prove only that the firearm was available to the defendant to facilitate the crime of violence.[19] In this case, Jane testified that Norris pointed a gun at her, and kept it near him when he assaulted her. She also testified that she was afraid to attempt escape because of the gun.

---

United States v. Rocha, 916 F.2d 219, 237 (5th Cir. 1990), cert. denied, 500 U.S. 934 (1991).

11

Again, this evidence is sufficient to uphold the jury's guilty verdict.  We affirm both convictions against Norris.

### IV. The Calculation of Osborne's Sentence.

Appellant Osborne asserts that the district court erred when it used an uncounseled prior misdemeanor conviction to increase his criminal history category.[20]  The district court's application of sentencing guidelines is a question of law, which we review *de novo.*[21]

If a prior conviction has not been held constitutionally invalid, then a district court has the discretion to include the conviction in calculating the sentence.[22]  The burden of proving that such a conviction is constitutionally invalid falls on the defendant.[23]  Osborne did not meet his burden in this case.

An uncounseled conviction that results in imprisonment is

---

Osborne was given a criminal history score of eight, placing him in category IV.  This score was determined as follows:

| | |
|---|---|
| 2 | points for indecency with a child |
| 1 | point for shoplifting two packages of Twinkies and Ding-Dongs |
| 2 | points for misdemeanor theft |
| 2 | points for committing the present offense while on probation |
| 1 | point for committing the present offense less than two years after being released from custody. |
| 8 | TOTAL. |

Osborne challenges the addition of two points for the misdemeanor theft conviction.

*United States v. Howard,* 991 F.2d 195, 199 (5th Cir.), *cert. denied,* --U.S.--, 114 S. Ct. 395 (1993).

*Id.*

Id. at 199.

12

unconstitutional only if the defendant did not waive his right to an attorney.[24]  In this case, the presentencing report, which was based on original court documents, reflects that Osborne did waive his rights before entering a guilty plea to the misdemeanor charge. Osborne alleges that he did not do so, but has produced no evidence to support his assertion .  Thus, Osborne did not meet his burden of proof.    The district court did not err in including the conviction in calculating Osborne's sentence.

## V. CONCLUSION.

For the foregoing reasons, we AFFIRM the convictions against Robert Carroll Osborne and Timothy Earl Norris, and also AFFIRM the sentence given to Robert Osborne.

---

*United States v. Haymer,* 995 F.2d 550, 552 (5th Cir. 1993).

13