110 F.3d 70
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shawn Dean BOW, Defendant-Appellant.
 No. 96-10277.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 11, 1997.
Decided March 18, 1997.
 
 1
 Before: NOONAN, and O'SCANNLAIN, Circuit Judges; RHOADES,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 We must determine whether the district court violated Shawn Dean Bow's Sixth Amendment right to a public trial when it partially closed the courtroom during the testimony of an eyewitness to a shooting.
 
 
 4
 * Bow challenges his criminal conviction by a jury on one count of the lesser included offense of voluntary manslaughter in violation of 18 U.S.C. § 1111, and one count of the use of a firearm in relation to a crime of violence in violation of 18 U.S.C. 924(c)(1).
 
 
 5
 Bow was indicted for the shooting death of Ferlin Grayson on September 2, 1995, at the Moapa Indian Reservation in the state of Nevada. At trial, Maureen Growler, an eyewitness to the shooting, offered testimony that was inconsistent with her earlier testimony to the Grand Jury and statements made to Federal Bureau of Investigation officers investigating the crime. Although she had testified before the Grand Jury that she had seen Bow shoot Ferlin, at the trial she changed her story and testified that another individual present, known as Red, had done the shooting. When it became clear that Growler had changed her story and was putting herself at risk of perjury, the district court recessed the trial and appointed separate counsel for Growler.
 
 
 6
 The following day, Growler's attorney requested that the courtroom be cleared during the remainder of Growler's testimony. He presented a letter written on behalf of his client in which Growler explained that she was apprehensive about testifying in the presence of family members of both the defendant and the victim. The letter further informed the court that Growler was related to both the defendant and the victim, that Bow and his wife had pressured Growler to lie to the authorities, and that the shooting had created a polarized community which put Growler in "an extremely difficult and uncomfortable situation." Growler claimed that although she had not been threatened regarding her testimony, that she was nonetheless very apprehensive.
 
 
 7
 The district court held a hearing on the request at which he read into the record the letter written on behalf of Growler. Bow's counsel objected to the complete closure of the courtroom during the remainder of Growler's testimony. She argued that the closure was not appropriate where no threats had been made against Growler, and that the jury might conclude that there were fewer spectators because Growler was in some special need of protection during her testimony. She also argued against excluding the press.
 
 
 8
 The court ruled in favor of excluding the families of the defendant and the victim during the remainder of Growler's testimony. Although Growler's attorney had requested that the court be completely cleared, the judge ruled that the press and other spectators would be allowed to remain in the courtroom. He noted that he was concerned about the well being of the witness, and that there had been "serious difficulties." While the judge did not indicate the nature of the difficulties, the record indicates that Growler had broken down during her testimony the previous day at least once. The judge further explained that he was aware of great division on the Indian reservation where the shooting occurred, and that he had concluded that on balance "the risk [of the partial closing] was far greater than any prejudice that might occur."
 
 
 9
 Growler continued her testimony before the jury with the family members excluded. She testified that she had seen Bow shoot Ferlin after an argument. Bow's attorney thoroughly cross examined Growler about her inconsistent statements. At the close of trial, the jury returned a verdict of guilty for the lesser included offense of voluntary manslaughter and the use of a firearm in a crime of violence. Bow was sentenced to 180 months in prison, and this timely appeal followed.
 
 II
 
 10
 The Sixth Amendment guarantees that a defendant shall enjoy the "right to a speedy and public trial." However, the right to a public trial is not absolute, and must give way in some cases to other interests essential to the fair administration of justice. Waller v. Georgia, 467 U.S. 39, 45 (1984).
 
 
 11
 Where a trial court orders a partial closure of the courtroom, the judge must have a substantial reason for making the exclusion, and the closure must be narrowly tailored to satisfy the purpose for which it was ordered. United States v. Sherlock, 962 F.2d 1349, 1356 (9th Cir.), cert. denied, 113 S.Ct. 419 (1992).
 
 
 12
 As to the first part of the test, the district court judge indicated that he was concerned for the welfare of the witness, and this was the substantial reason for partially closing the proceedings. While the judge did not enunciate the exact reasons for his concern, the court noted that there had been "difficulties," and the record makes it clear that he had considered Growler's letter, her demeanor in testifying on the previous day, and divisions in the small community. Concern for the welfare of a witness is a substantial reason justifying the partial closure of a courtroom. See Sherlock, 962 F.2d at 1357 (holding that protection of victim witness who was apprehensive of testifying before defendant's family satisfies substantial reason test); United States v. Eisner, 533 F.2d 987, 993-94 (6th Cir.), cert. denied, 429 U.S. 919 (1976) (holding partial closure justified to protect witness with fear of testifying in public). Therefore, the substantial reason prong of the test is satisfied.
 
 
 13
 Secondly, the closure was narrowly tailored to the purpose for which it was ordered. The trial judge refused to order a complete closure of the courtroom, and excluded only the family members of the defendant and the victim who were the cause of Growler's apprehension. Other spectators and the press were not excluded, and the transcript of the trial became a public record. This limited closing was tailored to the reason for issuing the partial closure order and does not implicate the kind of secrecy of proceedings which the Sixth Amendment was designed to guard against. Sherlock, 962 F.2d at 1358.
 
 
 14
 Where the court issues a narrowly tailored order, partially closing the courtroom for a substantial reason, we must further determine whether the district court properly followed the procedural requirements for closing the proceedings. Id. at 1356. There are three procedural requirements: first, the court must hold a hearing on the closure motion; secondly, the court must make factual findings supporting the closure; and finally, the court must consider reasonable alternatives to the closure. Id.
 
 
 15
 As to the first requirement, the parties agree that the district court held a hearing in which it considered the motion to clear the courtroom. The district court fulfilled the hearing requirement when it held a hearing outside of the jury's presence, and considered arguments for and against the closure order. Id.
 
 
 16
 Secondly, the district court must make factual findings to support the closure. Id. at 1358-59. While the district court's findings in this case are minimal, we conclude that they are sufficient to uphold the order. The judge read the entirety of Growler's letter into the record at the hearing. He noted that there had been difficulties, that he was concerned for the welfare of the witness, and that there were great divisions in the community. Given the limited scope and duration of the partial closure order, we conclude that these findings, while not as developed as we would wish, are sufficient to uphold the district court's order. See id. at 1359 (finding factual support adequate where district court noted that family members had peered and giggled during testimony); United States v. Farmer, 32 F.3d 369, 371 (8th Cir.1994) (gleaning facts from the record sufficient to support a partial closure).
 
 
 17
 Thirdly, the district court must have considered reasonable alternatives to the partial closure. Sherlock, 962 F.2d at 1358. During the hearing on the closure request, the judge discussed the scope of the exclusion order. While no specific alternatives to the partial closing were mentioned, the scope of the exclusion order was considered and altered. Growler's original request was for the courtroom to be entirely cleared, while the judge fashioned an order which permitted other spectators and the press to remain. The defense later indicated that it did not object to the removal of the victim's family, but requested that Bow's wife, as the only member of the defendant's family present at the trial, be allowed to remain. The judge considered this request and denied it, noting that the testimony would be public record. We conclude that the record reflects that the judge considered the limited reasonable alternatives that were available given the nature of the request before him, by issuing a more narrow order than originally requested and by considering and denying the defense request to allow Bow's wife to remain in the courtroom. See id. at 1359.
 
 III
 
 18
 Because the partial closing of the courtroom during a portion of one witness's testimony did not violate Bow's Sixth Amendment right to a public trial, his conviction is AFFIRMED.
 
 
 
 *
 The Honorable John S. Rhoades, Sr., Senior United States District Judge for the District of Southern California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3