16-272 (La.App. 5 Cir. 12/7/16)

**STATE of Louisiana**

v.

**Juan C. CANALES**

NO. 16–KA–272

Court of Appeal of Louisiana, Fifth Circuit.

December 07, 2016

COUNSEL FOR PLAINTIFF/APPEL-LEE, STATE OF LOUISIANA, Paul D. Connick, Jr., Terry M. Boudreaux, Anne M. Wallis

COUNSEL FOR DEFENDANT/AP-PELLANT, JUAN C. CANALES, Bruce G. Whittaker

Panel composed of Susan M. Chehardy, Robert M. Murphy, and Stephen J. Windhorst

1. In accordance with the law, initials will be used to reference the name of the victim. *See* La. R.S. 46:1844(W).

2. A.V. testified at trial that she was born in November of 1996, and was 18 at the time she gave her testimony before the jury. At

MURPHY, J.

Defendant appeals his conviction for sexual battery upon a known juvenile. For the reasons that follow, defendant's conviction is affirmed and his sentence is affirmed as amended. We further remand this case for correction of the commitment, consistent with the order in this opinion

**FACTS AND PROCEDURAL HISTORY**

Defendant, Juan Canales, was married to the victim, A.V.'s [1], mother. In 2010, the Kenner Police Department ("KPD") began an investigation of defendant after a complaint of sexual battery of a minor, A.V.,[2] was reported. The incidents had allegedly taken place in Kenner years before, when A.V. was approximately six or seven years old. The information was relayed to the Kenner Police Department by the Ouachita Parish Sheriff's Office. A.V.'s mother first contacted the Ouachita authorities after she learned that A.V. communicated to a friend, via the internet, that defendant had molested her. KPD Sergeant Joseph McRae contacted defendant, who denied any wrongdoing. Subsequent to the interview with defendant, a witness, Marvin Tran, came forward and told Sergeant McRae that he had personally seen defendant touch A.V. in an inappropriate way in Monroe, Louisiana, and that defendant had threatened A.V. at that time, telling her not to "say anything." Thereafter, defendant was arrested.

On March 28, 2013, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant with one count of sexual battery upon a known juvenile, a violation of La. R.S. 14:43.1. On August 9, 2013, defendant pled not guilty,

trial, A.V. testified that while defendant was married to her mother and the family lived in Kenner, defendant touched A.V.'s "private areas" with his hands and he also made A.V. touch him on one occasion.

and he ultimately proceeded to trial before a six-person jury on September 29, 2015. The jury found defendant guilty as charged on September 30, 2015. On October 15, 2015, defendant was sentenced to 10–years imprisonment at hard labor without the benefits of parole, probation, or suspension of sentence and ordered to pay various fines and fees. The State then filed a multiple offender bill of information which alleged defendant to be a second felony offender. After defendant stipulated to the allegations in the multiple bill, the trial court vacated the original sentence and re-sentenced defendant to 15 years at hard labor without the benefits of parole, probation, or suspension of sentence. After defendant's motion for new trial was denied, he filed a timely motion for appeal, which was granted.

## ASSIGNMENT OF ERROR

In his sole assignment of error, defendant contends that the trial court denied him his Sixth Amendment right to a public trial when it removed his family during the victim's testimony, based on the State's argument that the victim indicated it would be "incredibly difficult" to testify with those persons present in the courtroom. Defendant further asserts that the trial court's action of excluding the family members was an error because it does not meet the criteria for a valid court closure, as set forth by the United States Supreme Court in *Waller v. Ga.*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

Conversely, the State argues that the partial court closure was permissible, where its purpose was reasonably necessary to prevent A.V.'s embarrassment or emotional disturbance and to enable A.V. to testify to facts material to the case.

## LAW AND ANALYSIS

In the instant case, the record shows that, prior to trial, the State represented to the court that A.V. was reluctant to testify in front of members of defendant's family.

THE STATE:

. . .

There were—the victim in this case, Judge, has made it apparent to me that she will have great difficulty and embarrassment in testifying if the defendant's family is in the courtroom. She has said that she said that she would be very embarrassed to the point of shutting down if they're in the courtroom because she knows them. This used to be her stepfather.

. . .

The victim's testimony is of the upmost [sic] materiality. And she will be completely embarrassed, Judge, because she knows these people and she has said that she will have an incredibly difficult time testifying. So for that reason, Judge—I know it's to your discretion—I would ask the Court to respectfully request that the defendant's family members leave the courtroom while she's testifying.

Defense counsel objected to the State's request, and argued, in summary, that "[E]mbarrassment, in and of itself, should not be a reason to, to take away [defendant's] right to a public hearing." The trial judge then determined that members of defendant's family would not be present in the courtroom while A.V. testified. During trial, the trial court took a recess before A.V.'s testimony. Outside of the presence of the jury, the trial court instructed defendant's family that they were to exit the courtroom for the entirety of A.V.'s testimony. The proceedings resumed, and at the conclusion of A.V.'s testimony, the trial court again took a short recess. At that time, defendant's family was allowed to return to the courtroom.

■ We begin our analysis with an acknowledgement that the record in this case provides only a bare amount of information regarding A.V.'s unwillingness to testify while members of the defendant's family were present. A.V. was not sworn in and questioned by the court on this matter, nor was she cross-examined by defense counsel. The record contains the argument by the State, through the Assistant District Attorney, that testifying would cause A.V. to suffer emotionally. |₆Other than the information relayed to the court through the argument of the prosecuting attorney, no evidence or testimony was provided to the court for its consideration of whether defendant's family should be removed from the courtroom to facilitate A.V.'s testimony. The first issue to be addressed, then, is whether the State's argument to the Judge was a sufficient basis for the trial court to consider a partial court closure in the instant case.

While other appellate courts have found it permissible for a trial court to consider a motion for court closure, solely based upon assertions made on behalf of a witness by either the State or defense counsel, it is apparent that such a review is not without difficulty. For example, in *United States ex rel. Smallwood v. LaValle*, 377 F.Supp. 1148, 1151 (E.D.N.Y.), *aff'd.* 508 F.2d 837 (1974), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1586, 43 L.Ed.2d 788 (1975), which was a murder trial, the State informed the trial judge that its principal witness, a pregnant 16–year–old, was "afraid" to testify, and asked that the courtroom be cleared for her testimony. In the conversation that ensued between the court, the State and defense counsel, the court learned that the witness could not point to any single threat against her. The judge did not question the witness, nor was any additional evidence

provided in support of the State's requested action. Over defense counsel's objection, the judge cleared the courtroom while the witness testified. On an application for a writ of habeas corpus, the U.S. District Court for the Eastern District of New York considered the defendant's claim that the exclusion violated his right to a public trial. In finding that the trial court did not err, the district court reasoned:

> The colloquy in the record in this case reveals that the trial judge's concern was multi-faceted. His exclusion order was based partly on concern for the welfare of a young expectant mother and her unborn child and partly on her own subjective fear of reprisal—whether reasonable or unreasonable—if she testified in public. While the record falls short of establishing a real danger to her health or that of her child, or the reasonableness of her fears in terms of actual threats, or even a demonstration of her inability to testify publicly, this court is very reluctant to second-guess the trial court's discretion on a |₆cold record four years hence. *See United States ex rel. Bruno v. Herold, supra*, 408 F.2d [125] at 127, 129 [ (2d Cir .1969) ]. In view of the defense objection at trial, the benefits of hindsight and reflection suggest that the trial court might have been more circumspect in its decision, perhaps following the approach outlined above. Nevertheless, this court can perceive, under the applicable law, no error of constitutional magnitude indicating a disregard of the trial court's responsibility to conduct a fair and public trial.

*Id.* at 1153.[3]

In *State v. Poindexter*, 231 La. 630, 92 So.2d 390 (La. 1956), the issue before the

---

**3.** We note that *Smallwood* has previously been cited by Louisiana appellate courts on at least two occasions. *See, State v. Raymond*, 447 So.2d 51 (La. App. 1st Cir.), *writ denied*,

Louisiana Supreme Court was whether a trial judge erroneously concluded that he had no discretion to remove certain persons from the courtroom when a defense witness indicated that he could not testify with those persons present. In that case, there was no direct indication to the court from the potential witness that he could not testify. Instead, this information came through defense counsel who "testified under oath that the witness Beardon refused to testify in the case because of the presence of penitentiary personnel in the courtroom." Thereafter, the district attorney stipulated "that one of the defense attorneys had talked to the witness, and that he refused to testify unless the penitentiary personnel were removed from the courtroom." *Id.* at 633, 92 So.2d 390. The Supreme Court observed in its opinion that:

> In the instant case it may have been better procedure for counsel for the defendant to have had the witness sworn and let him personally refuse to testify so that he might have been subject to punishment for contempt. However, in view of the admission and stipulation by the State that this witness would not testify while the penitentiary personnel were present in the courtroom, his refusal has to be accepted as a fact by us.

*Id.* at 636, 92 So.2d 390.

Some of the cases cited in *Poindexter, supra,* contain examples of trial judges accepting an assertion by the State that a witness is fearful of testifying. In *Hogan v. State,* 191 Ark. 437, 86 S.W.2d 931 (1935), the court allowed a rape victim, who was a minor, to testify for a second time based solely upon State's request without any additional evidence, after the court apparently saw the fear of the witness while testifying in front of spectators in the

courtroom. In *State v. Damm,* (South Dakota), 62 S.D. 123, 252 N.W. 7 (1933), the trial court cleared the courtroom for the remainder of a minor rape victim's testimony based solely upon the State's request, when it was apparent that testifying was causing the victim emotional disturbance.

In *United States v. Osborne,* 68 F.3d 94 (5th Cir. 1995), the Assistant U.S. Attorney asked the trial judge to close the proceedings while "Jane Doe," who was the child victim of a kidnapping and sexual assault, testified. Over the defendants' objections, the court ordered that a sister of one defendant leave the courtroom, and also prohibited any new spectators from entering during Jane's testimony. The district court allowed the remaining audience, which included relatives of both defendants, to stay. In reviewing the convictions on appeal and the issue of whether the partial closure of the courtroom violated the defendants' constitutional right to a public trial, the U.S. Fifth Circuit Court of Appeal acknowledged the lack of information about why Jane did not wish to testify in front of certain persons in the courtroom:

> The government initially made a request for a full closure, arguing that it was concerned that forcing the twelve year old Jane to testify in front of the public would traumatize or intimidate her, perhaps causing psychological harm or making her unable to communicate. Although the district court did not create a detailed record on this issue, we infer that it eventually ordered the partial closure on this basis.

*Id.* at 98–99.

In the instant case, as in *Smallwood, supra,* and *Osborne, supra,* we are re-

449 So.2d 1347 (La. 1984), and *State v. Richardson,* 11–1178 (La.App. 1 Cir. 2/13/12), 90

So.3d 556, *writ denied,* 12–538 (La. 9/12/12), 98 So.3d 818.

quired to review, based upon a cold record, the action of the trial court in removing spectators from the courtroom, predicated upon the State's assertion only, that it was necessary to accommodate the victim's testimony and minimize ⌊₈the emotional impact that testifying would have upon her. As correctly pointed out by defense counsel as part of his objection, A.V. had not identified any threats against her or articulated a specific reason why she could not testify in front of those persons. Defense counsel also argued as part of his objection that the prosecutor was not in a position to assess "what emotional disturbance or embarrassment or consequences there might be" in compelling the victim to testify with those persons present. Regardless of whether that was an accurate statement, however, it remained unchallenged that A.V. had communicated to the State the difficulty she would encounter if required to testify in front of the defendant's family and associates. While not tantamount to the stipulation found in *Poindexter, supra,* we find that, in the least, there was a tacit acknowledgement in this case by defendant that A.V. told the prosecutor about her concerns. In fact, the record contains an uncontradicted statement by the prose-

cutor at the time of the request to remove the spectators, that he had previously discussed this very issue with defense counsel. In summary, we find, as the Court did in *Poindexter,* that there is a sufficient basis to consider the State's representation to the trial judge of A.V.'s communicating her difficulty in testifying before certain spectators in the audience to be an unchallenged summarization of A.V.'s expressed feelings.[4] Accordingly, the trial court had grounds to act upon the State's request.

■■ ⌊₉We next consider the issue of whether the trial court's action in removing the spectators during A.V.'s testimony resulted in an infrigement of defendant's constitutional right to a public trial.

■■ As provided in the sixth amendment of the United States Constitution, and Article 1, section 16, of the Louisiana Constitution, in a criminal case, the accused is afforded the right to enjoy a public trial. However, the right to a public trial is not absolute. *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The right to a public trial is not a "limitless imperative[,]" the right is subject to the trial judge's power to keep order in the courtroom or to prevent unnecessary

---

**4.** We acknowledge the great difficulty that victims of these types of crimes face in confronting their alleged abusers, as well as the legislative and judicial remedies available in Louisiana to child victim witnesses facing those circumstances in a court of law. In the modern world, where it is not uncommon for witnesses in criminal proceedings to be threatened and intimidated, trial courts need to take the necessary steps to properly protect those who may be placing themselves at personal risk by testifying against a defendant. Equally important to our system of law is ensuring the constitutional rights of accused persons through trial. With respect to the type of issue raised herein, one practice that district courts can employ to protect the interests of both the victim and the accused is a record which, at a minimum, makes clear: a witness's reason, preferably provided as sworn

testimony, for not wanting to testify in front of a person or persons in the courtroom, a colloquy stating the court's own findings and conclusions regarding those stated reasons by the witness, and, if applicable, a showing that any trial court action of a partial or full closure of a courtroom to accommodate a witness's testimony is an option least likely to restrict a defendant's constitutional right to a public trial under the particular circumstances. Proceedings that meet such a standard would, in this Court's opinion, eliminate an unfortunate circumstance where a victim, who may very well have a legitimate need to testify with accommodation, is required to testify yet a second time because the trial court's justification for closing the proceedings to the public in the first trial is not supported by the record before an appellate court.

pressures or embarrassment to a witness. *United States ex rel. Smallwood v. La-Valle, supra.* A trial judge may, in his sound discretion, exclude spectators from the courtroom while the testimony of a witness in a criminal case is being taken, if such a step is reasonably necessary to prevent embarrassment or emotional disturbance of that witness or to enable that witness to testify to facts material to the case. *State v. Poindexter, supra.*

Defendant urges this Court to apply the factors found in *Waller v. Georgia, supra,* to determine the propriety of the trial court's action in removing some of the spectators from the courtroom during A.V.'s testimony. *Waller,* however, dealt with a different set of circumstances. We find that the U.S. Fifth Circuit's opinion in *United States v. Osborne, supra,* provides a more relevant framework for analyzing this issue with respect to a partial closure of the proceedings. In *Osborne,* the U.S. Fifth Circuit Court of Appeal recognized that other circuit courts had adopted a modified version of *Waller,* which was "a less demanding test requiring the party seeking the partial closure to show only a 'substantial reason' for the closure."

Prior to the *Waller* decision, this circuit addressed the constitutionality of a partial closure in *Aaron v. Capps.* In *Aaron,* this court held that, when considering a partial closure, a trial court should look to the particular circumstances of the case to see if the defendant will still receive the safeguards of the public trial guarantee. This court reasoned that the partial closing of court proceedings does not raise the same constitutional concerns as a total closure, because an audience remains to ensure the fairness of the proceedings.

Although this circuit has not had the opportunity to reexamine the constitutionality of a partial closing since the *Waller* decision, five other circuits have addressed the issue. The Second, Eighth, Ninth, Tenth, and Eleventh Circuits have all found that *Waller's* stringent standard does not apply to partial closures, and have adopted a less demanding test requiring the party seeking the partial closure to show only a "substantial reason" for the closure. As in this circuit's *Aaron* decision, these courts have all based their decisions on a determination that partial closures do not implicate the same fairness and secrecy concerns as total closures.

We agree. We do not read *Waller* as altering this court's analysis of partial closings as discussed in *Aaron.* We now, however, also adopt the "substantial reason" test set forth by other courts as a method of determining if a partial closure meets the constitutional standards of *Aaron.*

Applying this test to the instant suit, we find that the partial closure was justified.

*Id.* at 98–99.

In the instant case, the State made the trial court aware of A.V.'s concerns that she would have great difficulty testifying if the defendant's family members were present. As discussed *supra,* we find that the State's argument on this point, without any additional evidence in the record, was sufficient for the court to consider a partial closure of the trial for A.V.'s testimony. The only remaining question, then, is whether the State's argument regarding A.V.'s reluctance to testify provided a substantial reason to the court to justify a partial closure.

In granting the partial closure, the trial judge explained her ruling, in part:

THE COURT:

. . .

As far as I'm concerned, individuals in the back really, in the gallery area, the family members have—don't have constitutional rights. He has to be here the whole time but it's not necessary that they be here the entire time. And if she's uncomfortable with them in the courtroom while she testify, [sic] and we want the truth, and we want her to testify truthfully, fully and ⌊₁₁truthfully, then I have to, at least within reason making sure his constitutional rights are protected, afford her the opportunity to do just that.

As the reviewing courts did in the cases discussed *supra*, we find the trial court's action of excluding certain persons from the courtroom for the limited duration of A.V.'s testimony to be adequately supported. The Louisiana Supreme Court has acknowledged that a trial judge has the discretion to exclude persons from the courtroom if he or she deems it to be reasonably necessary to prevent embarrassment or emotional disturbance of that witness or to enable that witness to testify to facts material to the case. *State v. Poindexter, supra*. In this case, the trial court made a finding on the record that removing the relevant spectators from the courtroom would assist the victim in testifying. As the court did in *United States v. Osborne*, we infer that the trial court took such action to help alleviate any impact that A.V. believed her testifying in the presence of defendant's family would have upon her emotional state. The trial court also took care to have the defendant's family leave from and return to the courtroom outside of the presence of the jury. Furthermore, the courtroom remained open to the general public during the portion of the trial when A.V. testified. Defendant has not alleged any prejudice resulting from the partial closure.

Based upon our review of the record, we cannot say that the trial judge's accommodations in this case to allow A.V. to testify with minimum embarrassment or emotional disturbance was an error that violated defendant's constitutional right to a public trial.[5] This assignment is without merit.

**ERROR PATENT REVIEW**

The record was reviewed for errors patent, according to La. C.Cr.P. Art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The following matters are noted.

⌊₁₂First, the trial court erred in ordering the defendant to participate in a sex offender treatment program. La. C.Cr.P. Art. 895(J) applies to sex offenders placed on probation. Accordingly, this part of defendant's sentence is vacated. *See, State v. Esteves*, 01–399, p. 6 (La.App. 5 Cir. 10/30/01), 800 So.2d 1040. The trial court further erred in imposing a "[g]eneral fine" of $250.00 during sentencing on the multiple bill, when La. R.S. 15:529.1 does not authorize a fine. *State v. Dickerson*, 584 So.2d 1140 (La. 1991). This portion of defendant's sentence is also vacated. This matter is remanded to the trial court with instructions to correct the commitment and to transmit the amended commitment to the officer in charge of the institution to which defendant has been sentenced. *See State ex rel. Roland v. State*, 06–0244 (La. 9/15/06), 937 So.2d 846 (*per curiam* ).

**DECREE**

Accordingly, for the foregoing reasons, defendant's conviction is affirmed. Defendant's sentence is vacated in part, and

---

**5.** *See, State v. Raymond*, 447 So.2d 51 (La. App. 1st Cir.), writ denied, 449 So.2d 1347 (La. 1984).

affirmed as amended. We remand this case for correction of the commitment, consistent with the order in this opinion.

**CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED; REMANDED WITH ORDER**